968 A.2d 638

## MOTOR VEHICLE ADMINISTRATION

v.

### Michael Glenn BAPTIST.

### No. 2791, Sept. Term, 2007.

Court of Special Appeals of Maryland.

March 30, 2009.

Dore J. Lebowitz (Valerie Johnston Smith, Douglas F. Gansler, Atty. Gen., on the brief), Glen Burnie, for Appellant.

No argument for Appellee.

Panel: KRAUSER, C.J., HOLLANDER and CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

**58**

HOLLANDER, Judge.

The Maryland Department of Transportation, Motor Vehicle Administration ("MVA"), appellant, challenges an Order issued by the Circuit Court for Montgomery County, imposing a stay, a temporary restraining order, and a final injunction barring the MVA's 90–day suspension of the driving privileges of Michael Baptist, appellee.[1] The MVA had imposed the suspension pursuant to Md.Code (2006 Repl.Vol., 2007 Supp.), § 16–205.1(b)(1) of the Transportation Article ("TR"), after a breath test showed that appellee was driving with an alcohol concentration of .20, in violation of TR § 21–902. In lieu of the suspension, the circuit court ordered the MVA to issue Baptist an ignition-interlock restricted license, even though Baptist failed to timely complete the statutory requirements for participation in the MVA's Ignition Interlock System Program (the "Program"). *See* TR § 16–205.1(b)(3)(vii); TR § 16–404.1.

This appeal followed. The MVA poses two questions, which we have reordered:

I. Did the circuit court exceed its limited authority to intervene by injunction in agency action, and fail to adhere to TR § 16–205.1, when it ordered the MVA to stay a statutorily mandated suspension of Baptist's license ..., despite Baptist's concession that he failed through inattention and neglect to complete within 30 days the actions required to elect participation in the interlock program?

II. Did the circuit court fail to comply with the Maryland Rules and with constitutional principles of due process when it entered a final injunction in a civil action only three days after the filing of the complaint, and when the entire proceeding consisted of a twenty-minute telephone conversation on the merits of Baptist's unserved pleadings?

---

1. Appellee did not submit a brief to this Court.

For the reasons that follow, we shall reverse the Order issued by the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 2007, Montgomery County Police stopped Baptist on suspicion of driving under the influence of alcohol.[2] Baptist consented to a breath test, which indicated that he had an alcohol concentration of .20 grams of alcohol per 210 liters of breath. Accordingly, appellee was under the influence *per se, see* TR § 11–174.1,[3] and was subject to a license suspension under TR § 16–205.1(b)(1)(i)(2)(A). That section provides that, for a first offense, the driver's license of a person whose alcohol concentration is .15 or more shall be suspended for a period of 90 days.

On the same date, the police issued Baptist an "Order of Suspension," which stated: "[Y]ou are hereby notified that your Maryland Driver's License/Privilege will be suspended effective on the **Forty-sixth (46)** day from the above 'Issue Date' because . . . you submitted to a test indicating an alcohol concentration of. 15 or more." In addition, the police provided Baptist with written notification that, in lieu of suspension, or a request for a hearing on the suspension, Baptist could elect to participate in the MVA's Program for one year, pursuant to TR § 16–205.1(b)(3)(vii), if he met certain eligibility requirements and completed enrollment in the Program within thirty days from the date of the Order of Suspension, i.e., by December 9, 2007. These requirements included installation of the interlock device in appellee's vehicle; his election of the

---

**2.** An employee of the Green Turtle Bar had notified police that Baptist was intoxicated and that he refused to call a taxi.

**3.** TR § 11–174.1(a) defines "under the influence of alcohol per se" as "an alcohol concentration at the time of testing of 0.08 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath."

We note that MVA refers to *blood* alcohol concentration, using the shorthand reference of "BAC." In this case, however, appellee's alcohol concentration was determined by a breath test, not a blood test. For the purpose of this appeal, the distinction is not material.

Program, in writing; and surrender of appellee's driver's license, in exchange for the issuance of a new license by the MVA, restricting appellee to driving vehicles equipped with an ignition interlock device. It is undisputed that an interlock device was timely installed on Baptist's vehicle, but Baptist did not timely submit his written election form, turn in his driver's license, or obtain a restricted license.

Baptist claimed below that the interlock device was installed on November 26, 2007. He then went to the MVA on December 24, 2007, because he did not receive anything in the mail from the MVA. But, because the lines were too long, he left. In the meantime, because Baptist did not timely complete the requirements for election and entry into the Program, the statutorily mandated 90–day license suspension took effect on December 25, 2007. On January 2, 2008, some three and a half weeks after expiration of the thirty-day deadline, Baptist sought an interlock restricted license from the MVA. At that time, he was informed that his 90–day license suspension was already in effect.

On January 4, 2008, through counsel, appellee filed in the circuit court a "Complaint for Injunctive Relief to Place Plaintiff in Interlock Program." The Complaint averred, in part (emphasis added):

5. . . . Mr. Baptist elected to enter the Ignition Interlock System Program. *On November 26, 2007, he* went to Obsession Motor Sports in Rockville, Maryland, and *had the Interlock System installed in his car.* A copy of the Lease Agreement is attached hereto as Exhibit 1.

6. While at Obsession Motor Sports, Mr. Baptist was told that his system would be monitored by a company called "Smart Start" which was in contact with the Motor Vehicle Administration. He understood that therefore MVA was notified of his decision to enter the interlock program. *He believed that MVA would send him a driver's license* which would permit him to drive as long as the car he was driving was equipped with the Interlock System.

7. Mr. Baptist made this decision because he needs his driver's license to keep his job. He is employed as a satellite communications engineer at Segovia, Inc. in Herndon, Virginia. He lives in Germantown. There is no public transportation available to him. Losing his license means losing his job. Therefore, he elected to enter the Interlock Program so as to keep his license.

8. Mr. Baptist is also the primary supporter of his daughter, four-year-old Haylee Baptist. He equally shares custody of Haylee with her mother. He drives Haylee to school. By entering the Interlock Program, he would be able to continue to drive Haylee to school.

9. *Unfortunately, Mr. Baptist did not take the Interlock Lease documents promptly to MVA. As set forth above, he thought that MVA was notified because Smart Start (working with the Motor Vehicle Administration) was monitoring his interlock.* He understood that MVA would send him an Interlock driver's license in the mail.

10. *Since he did not receive anything in the mail, on December 24, 2007, [appellee] went to the MVA in Gaithersburg. Unfortunately, the lines were so long* that after waiting several hours he gave up. (His young daughter was with him, and simply could not wait any longer on Christmas Eve.)

11. *On January 2, 2008, Mr. Baptist went back to MVA to find out why he had not received a driver's license. At that time, he was told that he had missed the thirty-day deadline to enter the Interlock Program.* He was also told that his license was suspended because he had not brought his Interlock paperwork to MVA.

\* \* \*

13. As set forth above, Mr. Baptist did enter the Interlock Program. The Interlock Program is actually installed on his vehicle (2006 Ford Taurus). He does not pose any danger to the community, since he already has the device installed. *His sole failure was that he did notify MVA by*

*bringing the Interlock Lease paperwork to them.* (He thought they were notified electronically because Smart Start was monitoring his Interlock.)

14. At this point, Mr. Baptist cannot legally drive. His license has been suspended and he cannot go to work. Given the extreme hardship, Mr. Baptist is respectfully requesting that this Honorable Court issue an Order immediately staying the suspension (temporary restraining order) and also ordering the MVA to enroll Mr. Baptist in the Interlock Program for one year.

Also on January 4, 2008, appellee's counsel filed a "Petition for Temporary Restraining Order (Immediate Stay of Suspension)," stating that Mr. Baptist would face "severe hardship" if he were required to wait for the MVA's answer or for the case to be fully litigated, because he could not go to work "to support himself and his family." Appellee also stated: "Since Mr. Baptist is already in the Ignition Interlock Program and already has the device installed in his car, there is no danger to the community in having him drive."

In addition, on January 4, 2008, appellee filed a "Certificate of Immediate Service," indicating that both the Petition and the Complaint had been faxed to Jonathan Acton, II, Esquire, Assistant Attorney General and Principal Counsel to the MVA. Appellee also filed a "Line," stating: "Kindly process this so that I can walk it to the duty judge when it is ready." In actuality, at approximately 3:00 p.m. on January 4, 2008, Baptist's counsel called Thomas Liberatore, MVA's Manager of Driver Wellness and Safety, and faxed his assistant a copy of the pleadings. As a result, on January 7, 2008, appellee's counsel filed an "Amended Certificate of Immediate Service," advising that the original Certificate of Service was incorrect. He averred that the documents had been faxed "to the Administrative Assistant for Thomas Liberatore, an executive at the Motor Vehicle Administration," and not to Acton, as had been represented in the original Certificate of Service. According to appellee, Assistant Attorney General Dore Liebowitz was given a copy, "presumably by Mr. Liberatore."

The Clerk apparently issued to counsel for Baptist a summons for "personal service." However, appellant contends that neither the MVA, its Administrator, nor the Office of the Attorney General was served with the summons.

The circuit court duty judge telephoned Liberatore on January 4, 2008, seeking to hold an immediate proceeding over the telephone.[4] Therefore, Mr. Liberatore requested assistance from the Office of the Attorney General. According to appellant, it was at that point that MVA's counsel reviewed, for the first time, the available documents and a copy of Baptist's driving record.

Thereafter, MVA's counsel participated in an unrecorded telephone call with the court. The MVA's lawyer argued that the MVA's action in suspending Baptist's license was proper because he had failed a breath test and had also failed to comply with the requirements for participation in the Program. According to appellant, at the conclusion of the telephone call the court ruled that Baptist's driving privileges should not be suspended, he should be enrolled in the Program, and he should receive a restricted driver's license. Baptist's counsel subsequently faxed a proposed order to counsel for the MVA.

Liebowitz faxed a letter to Baptist's counsel on January 7, 2008, with a copy to the judge, contesting three alleged defects in Baptist's proposed order. She wrote, in part:

> As you are aware, the MVA opposes any attempt to bypass the requirements of the Ignition Interlock Program by presenting what amounts to several actions in haste to a judge without proper notification to counsel. Although I participated in a phone conference before Judge McGann, the MVA did not have sufficient notice or opportunity to properly prepare its argument in opposition to your client's request.

---

4. The record does not contain any documents or docket entries reflecting the call from the judge.

Moreover, the Order which you propose to submit to Judge McGann contains several items which require clarification.

The first clause appears to be a Temporary Retraining [sic] Order, the proper form of which can be found at Maryland Rule 15–504(c). The second clause appears to be a stay of your client's license suspension, which belies the fact that there is no other case filed on his behalf which would justify a stay pending its outcome. Finally, the third clause of this Order appears to be a final decision wherein the Court is ordering Mr. Baptist be admitted into the Interlock Program.

As it is presently the MVA's intent to further litigate this matter in whatever manner is appropriate, kindly submit an Order to clarify the nature of this act and therefore, the nature of MVA's next remedy.

Despite Liebowitz's concerns, the court signed Baptist's proposed Order on January 7, 2008. It stated:

Having read and considered the Petition (Immediate Stay of Suspension) and having heard argument of counsel, and good cause having been shown, it is this 7th day of January, 2008 by the Circuit Court for Montgomery County, Maryland

ORDERED that the Petition for Temporary Restraining Order be and the same as [sic] hereby GRANTED; and it is further

ORDERED that the suspension of [Baptist's] driver's license ... is hereby STAYED immediately; and it is further

ORDERED that the Motor Vehicle Administration shall permit Plaintiff Michael Glen [sic] Baptist to be enrolled into the Ignition Interlock System Program, and shall issue him a driver's license with the appropriate restriction, and that the duration time for such program (one year) shall commence once the license is issued.

The Clerk entered the Order on January 8, 2008. On that date, Baptist obtained his restricted driver's license.[5]

## DISCUSSION

### I.

Before reviewing the MVA's contentions, it is helpful to review the text of some of the key statutory provisions concerning the Program. As the Court observed in *Meanor v. State*, 364 Md. 511, 528, 774 A.2d 394 (2001), "Since the enactment of its simple predecessor in 1969, as § 92A of former Article 66½ of the Code, § 16–205.1 has undergone multiple revisions and has grown from three to twelve pages, bringing with it all the complexities that such a growth ordinarily entails."

TR § 16–205.1, titled **"Suspension or disqualification for refusal to submit to chemical tests for intoxication,"** states, in part:

\* \* \*

(b) *No compulsion to take chemical test; consequences of refusal.*—(1) ... [A] person may not be compelled to take a test. However, the detaining officer shall advise the

---

**5.** On February 6, 2008, the MVA filed in the circuit court a "Motion for Stay of Injunction Pending Appeal," arguing that it would suffer "irreparable injury" if a stay were not granted because "in all likelihood Mr. Baptist will complete his year in the Ignition Interlock System ... before this case will be decided" on appeal, which might "render moot the TR § 16–205.1(b)(i)(1)(2)(A) sanction against his driver's license that the MVA asserts he must serve as a matter of law." In addition, appellant averred: "... Mr. Baptist will not be harmed if the Court grants a stay of the Order and also orders that the 90–day suspension be held in abeyance, allowing him to continue to drive a vehicle using the ignition interlock pending the outcome of the appeal in the Court of Special Appeals." Appellee opposed the motion for stay. The circuit court denied the motion on February 15, 2008.

On April 11, 2008, this Court entered an Order granting the MVA's "Motion for Stay of Injunction Pending Appeal." Under the Order, appellee's 90–day suspension has been held in abeyance, and Baptist has been allowed to remain in the Program pending the outcome of this appeal.

person that, on receipt of a sworn statement from the officer that the person ... was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

(i) In the case of a person licensed under this title:

\* \* \*

2. For a test result indicating an alcohol concentration of 0.15 or more at the time of testing:

A. For a first offense, suspend the driver's license for 90 days;

\* \* \*

(3) If the person refuses to take the test or takes a test which results in an alcohol concentration of 0.08 or more at the time of testing, the police officer shall:

(i) Confiscate the person's driver's license issued by this State;

(ii) Acting on behalf of the Administration, personally serve an order of suspension on the person;

(iii) Issue a temporary license to drive;

(iv) Inform the person that the temporary license allows the person to continue driving for 45 days if the person is licensed under this title;

(v) Inform the person that:

1. The person has a right to request, at that time or within 10 days, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at the time of testing, and the hearing will be scheduled within 45 days; and

2. If a hearing request is not made at that time or within 10 days, but within 30 days the person requests a hearing, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at

the time of testing will be scheduled, but a request made after 10 days does not extend a temporary license issued by the police officer that allows the person to continue driving for 45 days;

* * *

(vii) Inform the person that, if the person refuses a test or takes a test that indicates an alcohol concentration of 0.15 or more at the time of testing, the person may participate in the Ignition Interlock System Program under § 16–404.1 of this title instead of requesting a hearing under this paragraph, if the following conditions are met:

1. The person's driver's license is not currently suspended, revoked, canceled, or refused;

2. The person was not charged with a moving violation arising out of the same circumstances as an administrative offense under this section that involved a death of, or serious physical injury to, another person; and

3. Within the same time limits set forth in item (v) of this paragraph, the person:

A. Surrenders a valid Maryland driver's license or signs a statement certifying that the driver's license is no longer in the person's possession; and

B. Elects in writing to participate in the Ignition Interlock System Program for 1 year. . . .

TR § 16–205.1(n) is relevant. It states:

(n) *Modification of suspension.*—(1) The Administration may modify a suspension under this section or issue a restrictive license if:

(i) The licensee did not refuse to take a test;

(ii) The licensee has not had a license suspended under this section during the past 5 years;

(iii) The licensee has not been convicted under § 21–902 of this article during the past 5 years;

(iv) The licensee has a test result indicating an alcohol concentration of less than 0.15; and

(v) 1. The licensee is required to drive a motor vehicle in the course of employment;

2. The license is required for the purpose of attending an alcoholic prevention or treatment program;

3. The Administration finds that the licensee has no alternative means of transportation available to or from the licensee's place of employment and, without the license, the licensee's ability to earn a living would be severely impaired; or

4. The Administration finds that the license is required for the purpose of obtaining health care treatment, including a prescription, that is necessary for the licensee or a member of the licensee's immediate family and the licensee and the licensee's immediate family have no alternative means of transportation available to obtain the health care treatment.

(2) In addition to the authority to modify a suspension or issue a restrictive license under paragraph (1) or (4) of this subsection, the Administration may modify a suspension under this section or issue a restrictive license, including a restriction that prohibits the licensee from driving or attempting to drive a motor vehicle unless the licensee is a participant in the Ignition Interlock System Program established under § 16–404.1 of this title if:

(i) The licensee did not refuse to take a test;

(ii) The licensee has not been convicted under § 12–902 of this article;

(iii) The licensee has a test result indicating an alcohol concentration of less than 0.15; and

(iv) The license is required for the purpose of attending:

1. A noncollegiate educational institution . . . ; or

2. A regular program at an institution of postsecondary education.

(3) If the licensee refused to take a test or took a test that indicated an alcohol concentration of 0.15 or more at the time of testing, the Administration may not modify a

suspension under this section or issue a restrictive license except as provided under paragraph (4) of this subsection.

(4)(i) In addition to the authority to modify a suspension or issue a restrictive license under subsection (b)(3)(vii) of this section or paragraph (1) or (2) of this subsection, the Administration may modify a suspension under this section or issue a restrictive license to a licensee as provided in this paragraph.

(ii) If the licensee refused to take a test or took a test that indicated an alcohol concentration of 0.15 or more, the Administration may modify suspension under·this section or issue a restrictive license if the licensee participates in the Ignition Interlock System Program for 1 year.

TR § 16–404.1 titled **"Ignition Interlock System Program,"** is also pertinent. TR § 16–404.1 states, in part:

(b) *In general.—*

\* \* \*

(3) An individual may be a participant if:

\* \* \*

(iv) The Administration modifies a suspension or issues a restrictive license to the individual under § 16–205.1(b)(3)(vii) or (n)(2) or (4) of this title.

(4) The Administration may:

(i) Issue a restrictive license to an individual who is a participant in the Program during the suspension period as provided under § 16–404(c)(3) of this subtitle.... [6]

---

**6.** TR § 16–404 is titled "**Effect of accumulated points.**" TR § 16–404(c)(3) provides:

(c) *Duration of suspension.—*
\* \* \*

(3) The Administration may issue a restrictive license for the period of the suspension to an individual who participates in the Administration's Ignition Interlock System Program under § 16–404.1 of this subtitle.

* * *

(c) *Commencement of participation.*—For purposes of § 16–404(c)(3) of this subtitle . . . a participant is considered to begin participation in the Program when the participant provides evidence of the installation of an ignition interlock system by an approved service provider in a manner required by the Administration.

The MVA's written instructions as to the requirements for participation in the Program were provided to appellee. They stated, in part:

3. Within thirty (30) days of the date of this Order of Suspension you must:

- Elect in writing to participate in the Ignition Interlock System Program for 1 year by completing and returning the bottom portion of this form;

- Have an ignition interlock system installed on your vehicle by one of the approved Interlock Service Providers . . . .;

- Surrender to the Motor Vehicle Administration (MVA) your valid Maryland driver's license, or in the event your license is not in your possession, sign a certified statement that your license is no longer in your possession; and

- Take the sealed enrollment form from the service provider and this form to any full service MVA office to obtain a Maryland driver's license restricted to the operation only of vehicles equipped with an ignition interlock device.

The Code of Maryland Regulations ("COMAR") is also applicable. COMAR 11.11.13.03 states, in part:

03. Requirements for Enrollment in the Program.

A. To enroll as a participant in the Program, an individual shall:

(1) Have a valid Maryland license that is not currently suspended, revoked, cancelled, or refused in this or any other state;

(2) Notify the Administration, in writing, of the individual's choice to participate in the Program;

(3) Have an interlock device installed in the individual's vehicle by an approved service provider;

(4) Surrender all Maryland driver's licenses, including a temporary license, or submit a signed statement certifying no driver's license is in the individual's possession; and

(5) Submit the service provider's completed sealed enrollment form to a full service Administration office and obtain a driver's license with an interlock-restriction.

B. An individual may not become a participant and will not receive credit for participation in the Program unless all the requirements set forth in § A of this regulation have been complied with.

C. An individual who elects to participate in the Program under Transportation Article, § 16–205.1(b)(3)(vii), Annotated Code of Maryland:

(1) May not have been charged with a moving violation arising out of the same circumstances as an administrative offense under that section involved a death of or serious physical injury to another individual; and

(2) *Shall meet the enrollment requirements set forth in § A of this regulation within 30 days of the date on the Order of Suspension.*

D. An individual is no longer eligible to participate in the Program under Transportation Article, § 16–205.1(b)(3)(vii), Annotated Code of Maryland, if the Administration receives a request for an administrative hearing from the individual. . . . (Emphasis added.)

█ With the complex statutory scheme in mind, we turn to MVA's contentions. It asserts: "Beyond the manifold procedural errors the circuit court committed, and even assuming the facts alleged in Baptist's injunctive action are true, the circuit court exceeded its limited judicial authority when it ordered the MVA to enroll Baptist in the ignition interlock program." According to appellant, the circuit court improperly "intervene[d] in agency action, and failed to adhere to TR

§ 16–205.1," by ordering the MVA "to stay Baptist's suspension and issue him a restricted license." We agree.

The Order of Suspension was issued on November 9, 2007. From that date, Baptist had thirty days to complete the requirements for participation in the Program. On November 26, 2007, appellee took his vehicle to an approved interlock provider and had the required device installed on his vehicle. But, by his own admission, appellee did not complete the election form, surrender his unrestricted driver's license, or obtain a restricted license within thirty days. Indeed, by his own account, Baptist did not go to the MVA until December 24, 2007, which was more than two weeks beyond the deadline. Even then, he left because the lines were too long; he did not return to the MVA until January 2, 2008, almost two months after the Order of Suspension had been issued. As the MVA points out, "Baptist delayed completion of the election so long that his 45–day temporary license on the front of the Order of Suspension had already expired, and Baptist had been driving suspended for a week when he finally appeared at the MVA."

To be sure, Baptist claimed that he thought that the company that installed the interlock device would notify the MVA of Baptist's election, and that the MVA would then issue an ignition-interlock restricted license to him. But, Baptist was clearly advised that it was his responsibility to complete the requisite steps within the thirty-day period. Given that Baptist failed to adhere to the statutory requirements under TR § 16–205.1(b)(3)(vii), we agree with the MVA that, pursuant to TR § 16–205.1(b)(1)(i)(2)(A) and (b)(3)(iv), it "acted within the law when it commenced the 90–day suspension of Baptist's license" on the 46th day after the Order of Suspension.

Of import here, we also agree with the MVA that the court had no authority to excuse Baptist's noncompliance. Indeed, under the statute there are no exceptions to the prerequisites for participation in the program.[7]

---

7. Even if due process requires some exceptions, such as if the driver fell into a coma during the thirty-day period, Baptist never proffered any

We are mindful of appellee's assertion that he needed to drive for his employment and for family reasons. But, as the MVA observes, "virtually all drinking-driving offenders facing the loss of their privileges have these same needs. If that fact alone were sufficient cause to waive the requirements and the deadlines for electing the program, no one would have to comply." Therefore, the court was not entitled to waive the statutory requirements because of hardship, or for an innocent mistake in failing to adhere to the deadlines. Its ruling contravened the Legislature's intent in enacting the Program.

The "paramount purpose" of the Legislature was to "craft[ ] a regulatory scheme of expedient procedures that swiftly would impose penalties for drunk driving irrespective of any parallel potential criminal processes or penalties." *Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 59, 821 A.2d 62 (2003). By 1998 Md. Laws, Ch. 526, the Legislature expanded the Program to provide that, if the licensee participates in the Program, "MVA may modify a suspension or issue a restrictive license whether the licensee refused the test or took it and showed a BAC of 0.10 or more." *Meanor*, 364 Md. at 531, 774 A.2d 394. Among other things, TR § 16-205.1(n)(2), "which applies only if the licensee did not refuse to take the test, was amended to allow MVA to add as a condition to the restrictive license a restriction that prohibits the licensee from driving or attempting to drive unless the licensee is a participant in the Ignition Interlock Program." [8]

---

compelling circumstance to excuse his procedural default. *Cf. In re Adoption/Guardianship*, 370 Md. 250, 260–61, 805 A.2d 254 (2002) (in the context of an untimely objection to the termination of parental rights, stating that "something so extreme [as falling into a coma] might indeed present a due process problem that would require, as a matter of Constitutional imperative, the excusing of a late objection." But, "absent some extraordinary circumstance that would require a different result as a matter of due process, a Circuit Court has no authority to accept a late-filed objection. . . . ").

8. The *Meanor* Court also explained, 364 Md. at 531, 774 A.2d 394, that by a 1998 amendment to TR § 16-205.1(n)(3) and the addition of subsection (n)(4), the MVA was allowed, "for the first time," to "modify a suspension or issue a restrictive license to a person who *refused* to

House Bill 525, 2006 Md. Laws Ch. 461, again amended TR § 16–205.1. In particular, the General Assembly increased sanctions for licensees who drive with an alcohol concentration of .15 or more.[9] Notably, the statute does not confer any discretion on the MVA or the court to modify the high offender's sanction by reducing the period of suspension. As the MVA explains in its brief, "The only remaining possibility for modification of the high BAC offender's period of suspension is participation in the ignition interlock program for one year under TR § 16–205.1(n)(3) and (4)."

The MVA elaborates:

The amendment provided the option for those drinking drivers who refuse the test, or take the test with a test result of .15 or greater, to voluntarily elect one-year's participation in the interlock program instead of requesting a hearing or serving the enhanced period of suspension. The new option to elect participation in the program furthers the statute's primary purpose to *swiftly* protect the public by preventing a high BAC offender from starting a vehicle and driving on the roadways with alcohol in his or her system. The requirement to drive only with an ignition interlock equipped vehicle is not fully enforceable, however, until the motorist has turned in [his/her] regular license and obtained a restricted one. There are many ways to circumvent the device and the program, and the easiest of these is simply to drive another vehicle. *Once the ignition interlock restricted license is issued, however, if the offender is stopped for another violation while driving a vehicle with-*

---

take the test if the person participates in the Program." In this case, appellee did not refuse to take an alcohol test.

**9.** Prior to the amendment, the consequences of an alcohol concentration of .08 or more did not vary depending on the extent to which the driver exceeded that limit. But, House Bill 525 imposed enhanced penalties for a high alcohol concentration offender. Under TR § 16–205.1(b)(1)(i), the license of a driver who takes an alcohol test with a result of .08 to .14 shall be suspended for 45 days for a first offense, or 90 days for a second or subsequent offense. And, if the driver's alcohol concentration is .15 or greater, the license shall be suspended for 90 or 180 days, respectively, for a first or subsequent violation.

*out the interlock device, his driver's license and record will reveal the restriction and the violation. That is why the legislature expressly provided that, as a condition of such election, the licensee must turn in any valid, non-restricted Maryland license no later than 30 days after the Order of Suspension. TR § 16–205.1(b)(3)(vii)(3)(A).[ ]* (Emphasis added.)

On this basis, the MVA persuasively argues:

Given that HB 525's primary focus was to increase administrative penalties for high BAC offenders, the option to elect a year in the interlock program was clearly not intended to provide those same offenders greater leniency, or a way to delay protection of the public. Yet, the circuit court's order did just that. Currently, MVA personnel at branches throughout the State strictly apply the 30–day deadline and will not issue a restricted license if the high BAC offender shows up late with the ignition-interlock installation forms. If the courts reject that bright-line rule and excuse the requirements for full, enforceable enrollment in the interlock program within thirty days after the Order of Suspension, just because a motorist like Baptist neglects to read the instructions or waits until it is convenient to surrender his license and obtain a restricted one, the MVA's ability to uniformly administer the program in a manner consistent with the letter and purpose of the law will break down.

The various provisions that we have cited aim to protect the public from those who choose to drive under the influence of alcohol; they are not meant to elevate the needs of the accused driver over the interests of the public. The court's decision to disregard the requirements outlined above was at odds with the legislative purpose of § TR 16–205.1. *See Motor Vehicle Admin. v. Shepard*, 399 Md. 241, 255, 923 A.2d 100 (2007) ("The purpose of [TR § 16–205.1 ] was to reduce the incidence of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests; the statute was not meant to protect drivers."); *Motor Vehicle Admin. v. Jones*, 380 Md. 164, 178, 844 A.2d 388 (2004)

(stating that "the Legislature intended 'to create procedures that would be an expedient and effective deterrent and sanction against drunk driving.'") (citation omitted); *Motor Vehicle Admin. v. Richards,* 356 Md. 356, 373, 739 A.2d 58 (1999) (stating that the suspension of a license serves a remedial purpose, including protection of the public); *Motor Vehicle Admin. v. Shrader,* 324 Md. 454, 475, 597 A.2d 939 (1991) (recognizing that the "primary purpose" of TR § 16–205.1 is protection of the public). Therefore, we conclude that the court erred by directing the MVA to permit appellant to participate in the Program, and by barring the MVA from imposing the required 90–day suspension.

## II.

Alternatively, appellant contends that the process employed below was so flawed as to require a reversal. Before addressing these contentions, we turn to review some of the rules of procedure on which appellant relies.

Maryland Rule 15–501, pertaining to the issuance of injunctions, is relevant. It provides:

**Rule 15–501. Injunctions–Definitions**

The following definitions apply in the rules in this Chapter;

(a) **Injunction.** "Injunction" means an order mandating or prohibiting a specified act.

(b) **Preliminary Injunction.** "Preliminary injunction" means an injunction granted after opportunity for a full adversary hearing on the propriety of its issuance but before a final determination of the merits of the action.

(c) **Temporary Restraining Order.** "Temporary restraining order" means an injunction granted without opportunity for a full adversary hearing on the propriety of its issuance.

Rule 15–502 sets forth general provisions regarding injunctions. In particular, 15–502(d) and (e) state:

**Rule 15–502. Injunctions—General provisions.**

* * *

(d) **Not binding without notice.** An injunction is not binding on a person until that person has been personally served with it or has received actual notice of it by any means.

(e) **Form and scope.** The reasons for issuance or denial of an injunction shall be stated in writing or on the record. An order granting an injunction shall (1) be in writing (2) be specific in terms, and (3) describe in reasonable detail, and not by reference to the complaint or other document, the act sought to be mandated or prohibited.

Rule 15–504 addresses temporary restraining orders. It states, in part:

**Rule 15–504. Temporary restraining orders.**

(a) **Standard for granting.** A temporary restraining order may be granted only if it clearly appears from specific facts shown by affidavit or other statement under oath that immediate, substantial, and irreparable harm will result to the person seeking the order before a full adversary hearing can be held on the propriety of a preliminary or final injunction.

(b) **Without notice.** A temporary restraining order may be granted without written or oral notice only if the applicant or the applicant's attorney certifies to the court in writing, and the court finds, that specified efforts commensurate with the circumstances have been made to give notice. Before ruling, the judge may communicate informally with other parties and any other person against whom the order is sought or their attorneys.

(c) **Contents and duration.** In addition to complying with Rule 15–502(e), the order shall (1) contain the date and hour of issuance; (2) define the harm that the court finds will result if the temporary restraining order does not issue; (3) state the basis for the court's finding that the harm will be irreparable; (4) state that a party or any person affected by the order may apply for a modification or dissolution of the order on two days' notice, or such shorter notice as the

court may prescribe, to the party who obtained the order; and (5) set forth an expiration date, which shall be not later than ten days after issuance for a resident and not later than 35 days after issuance for a nonresident. The order shall be promptly filed with the clerk. . . .

\* \* \*

(f) **Modification or dissolution.** A party or person affected by the order may apply for modification or dissolution of the order on two days' notice to the party who obtained the temporary restraining order, or on such shorter notice as the court may prescribe. The court shall proceed to hear and determine the application at the earliest possible time. The party who obtained the temporary restraining order has the burden of showing that it should be continued.

Rule 15–505, which governs preliminary injunctions, states:

**Rule 15–505. Preliminary injunctions.**

(a) **Notice.** A court may not issue a preliminary injunction without notice to all parties and an opportunity for a full adversary hearing on the propriety of its issuance.

(b) **Consolidation with a trial on merits.** Before or after commencement of the hearing on the preliminary injunction, the court may order that a trial on the merits be advanced and consolidated with the preliminary injunction hearing, so long as any right to trial by jury is preserved.

Appellant also cites portions of Rule 2–124:

**Rule 2–124. Process–Persons to be served.**

\* \* \*

(j) **State of Maryland.** Service is made upon the State of Maryland by serving the Attorney General or an individual designated by the Attorney General in a writing filed with the Clerk of the Court of Appeals. In any action attacking the validity of an order of an officer or agency of this State not made a party, the officer or agency shall also be served.

(k) **Officer or Agency of the State of Maryland.** Service is made on an officer or agency of the State of Maryland by serving (1) the resident agent designated by the officer or agency, or (2) the Attorney General or an individual designated by the Attorney General in a writing filed with the Clerk of the Court of Appeals. If service is made on the Attorney General or a designee of the Attorney General and the officer or agency is not ordinarily represented by the Attorney General, the Attorney General or designee promptly shall forward the process and papers to the appropriate officer or agency.

In addition, appellant relies on Rule 1–351:

**Rule 1–351. Order upon ex parte application prohibited—Exceptions.**

No court shall sign any order or grant any relief in an action upon an ex parte application unless:

(a) an ex parte application is expressly provided for or necessarily implied by these rules; or

(b) the moving party has certified in writing that all parties who will be affected have been given notice . . . .

The MVA outlines a host of errors in the proceedings below. It argues that "[t]he circuit court erred by entering a permanent injunction without a hearing or proper determination on the merits," and "disregarded the fundamental precepts respecting the issuance of injunctive relief. . . ." According to appellant, the court "illegally and improperly adjudicated an entire lawsuit on the basis of a twenty-minute telephone call prior to notice or service of the lawsuit upon counsel for the Motor Vehicle Administration."

██ In particular, appellant points to numerous violations of "the mandatory requirements of Maryland Rules 15–501 through 15–505." It contends that the MVA was "deprived . . . of due process" because MVA was not afforded "a hearing on the merits as required by Maryland Rules 15–504 and 15–

505." [10] In addition, the MVA claims that the court "never addressed the reasons for issuance of the injunction in its written Order, in contravention of Rule 15–502(e). . . ."

If the Order is construed as a temporary restraining order, the MVA insists that appellee failed to show that substantial or irreparable harm would befall him prior to a hearing on the next business day, as required by Rule 15–504(a). Appellant also asserts that the Order "failed to include a statement of the harm warranting temporary restraint, failed to explain why the order was needed to avoid irreparable harm, failed to include notice to the affected parties of the right to seek its modification or dissolution upon certain terms and failed to set forth an expiration date not to exceed 10 days, as required by Rule 15–504(c) and (f)." Appellant also complains that Baptist did not furnish a bond, as required by Rule 15–503 (stating that "a court may not issue a temporary restraining order or preliminary injunction unless a bond has been filed").

Further, appellant points out that appellee sent his pleadings to an MVA manager, rather than the Attorney General's Office, which constituted "inappropriate notice" under 15–504(b). Appellant also contends that, contrary to Rules 2–124(j) and 2–124(k), the MVA was "deprived of the basic legal safeguards for notice of a lawsuit." In this regard, it maintains that "Baptist did not comply with the necessary conditions for obtaining jurisdiction and for maintaining his case when he failed to properly serve his complaint." *See* Md. Rules 2–124; 15–502(d). The MVA continues:

> Although a plaintiff may seek emergency relief pursuant to Maryland Rule 1–351, the rule requires that in all but the most special circumstances, a moving party must certify in "writing that all parties who will be affected have been given notice" of the time and place of the court hearing. A

---

**10.** We pause to observe that the State is not a person for purposes of the Due Process Clause of the Fifth Amendment. *South Carolina v. Katzenbach*, 383 U.S. 301, 323, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966) ("The word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union. . . .").

special circumstance includes one in which a party seeks protection from physical harm. *See* Md.Code Ann., Fam. Law § 1–203. There were no special circumstances that prevented Baptist from properly notifying the Attorney General's Office of any anticipated proceedings under Rule 1–351.

Even assuming that the MVA was served, appellant points out that it was entitled to thirty days under the rules to file a response, pursue affirmative defenses, or file appropriate preliminary motions. It cites, *inter alia,* Md. Rule 2–321 (pertaining to the time for filing an answer); Rule 2–322 (pertaining to preliminary motions); Md. Rule 2–323 (addressing contents of an answer).

In sum, appellant argues:

[T]the circuit court made a rapid-fire and permanent determination after a twenty-minute telephonic hearing. That procedure contradicted longstanding and fundamental principles of fairness and due process, denying the MVA a proper opportunity to be served, to respond to the complaint, to file preliminary motions, to draft meaningful argument, to call witnesses or to produce any substantial evidence to the court in support of its opposition to the granting of this relief. . . .

While Baptist understandably desired immediate relief based on his perceived need to avoid irreparable harm of losing his driving privilege, the trial court inappropriately acquiesced in his attorney's tactic of bypassing the Maryland Rules and the law of injunction. The circuit court's premature adjudication, enjoining the MVA to grant the relief Baptist sought, was produced as a result of the procedural shortcomings of Baptist's lawsuit.

 We need not resolve all of the claims lodged by MVA to reach the conclusion that the proceedings below were patently flawed. Among other things, the court issued a permanent injunction after an unrecorded, twenty-minute telephonic hearing, without affording the MVA the opportunity for

a trial on the merits.[11] *See NCAA v. Johns Hopkins Univ.,* 301 Md. 574, 483 A.2d 1272 (1984) (recognizing the importance of a determination on the merits with respect to the issuance of a permanent injunction). In addition, we have no idea as to the basis for the court's ruling, in contravention of Rule 15–502(e), which states: "The reasons for issuance or denial of an injunction shall be stated in writing or on the record." Therefore, we conclude that the court erred by entering a final injunction. However, under the circumstances of this case, discussed *supra,* a remand is not appropriate.

**JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEE.**

---

11. Even if the court below merely granted a preliminary injunction, the process violated Rule 15–501(b), which provides that a court may grant a preliminary injunction "after opportunity for a full adversary hearing on the propriety of its issuance but before a final determination of the merits of the action." What transpired below was hardly a "full adversary hearing." If the Order of January 8, 2008, constituted a temporary restraining order, Rule 15–504(c) required the court to define the harm that "will result if the temporary restraining order does not issue," and to state the basis for its finding that the harm will be "irreparable."