*Jessica N. Woznicki v. GEICO General Insurance Company*, No. 52, September Term 2014, and *Jeannine Morse v. Erie Insurance Exchange*, No. 54, September Term 2014, Opinion by Greene, J.

**INSURANCE LAW – INS. ART. § 19-511 (UNINSURED MOTORIST COVERAGE – SETTLEMENT PROCEDURES) – WAIVER**

Consistent with the Legislature's goal of promoting prompt settlement and recovery for the victim, *see Buckley v. Brethren Mut. Ins. Co.*, 207 Md. App. 574, 590, 53 A.3d 456, 465 (2012) ("*Buckley I*"), *aff'd*, 437 Md. 332, 86 A.3d 665 (2014), an insurer may waive its right, under § 19-511, to receive written notice of an uninsured tortfeasor's liability insurer's settlement offer where "the amount of the settlement offer, in combination with any other settlements arising out of the same occurrence, would exhaust the bodily injury or death limits of the applicable liability insurance policies[.]" § 19-511(a). In the instant case, no rational trier of fact could conclude that the insured's attorney's sole statement that it was his understanding that he had obtained the insurer's consent during a conversation with an unknown claims representative, standing alone, constituted a waiver, express or implied, of the statutory or contractual requirement to send the insurer a copy of the uninsured tortfeasor's settlement offer and obtain the insurer's written consent to acceptance of the settlement prior to accepting any such offer.

**INSURANCE LAW – INS. ART. § 19-511 (UNINSURED MOTORIST COVERAGE – SETTLEMENT PROCEDURES) – PREJUDICE UNDER INS. ART. § 19-110 (DISCLAIMERS OF COVERAGE ON LIABILITY POLICIES)**

The prejudice rule contained in § 19-110 of the Insurance Article does not apply to an insurer seeking to disclaim coverage to its insured as a result of the insured's failure to obtain the insurer's consent to settle as required by § 19-511 or the insurance policy. Section 19-110 applies only where an insurer "disclaim[s] coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice[.]" § 19-110. The decision to limit the scope of the statute was deliberate. *Gov't Employees Ins. Co. v. Harvey*, 278 Md. 548, 552, 366 A.2d 13, 16-17 (1976). A failure to comply with a consent to settle clause or § 19-511 is not equivalent to a failure to notify or cooperate, therefore § 19-110 is inapplicable. Similarly our decision in *Prince George's Cnty. v. Local Gov't Ins. Trust*, 388 Md. 162, 879 A.2d 81 (2005) is inapplicable. *Local Gov't Ins. Trust*, in effect, applied the statutory prejudice rule to an insurance pool not engaged in the "insurance business," despite not falling under the definition of "insurer" as defined for the purposes of § 19-110. *See* § 1-101 (defining insurer as "each person engaged as indemnitor, surety, or contractor **in the business of entering into insurance contracts**") (emphasis added). The disclaimer in *Local Gov't Ins. Trust* was grounded on the insured's failure to give notice. A failure to comply with a consent to settle clause is not equivalent to a failure to give notice.

Circuit Court for Cecil County
Case No. 07-C-12-000568
Case No. 07-C-11-000221
Argued: March 9, 2015

IN THE COURT OF APPEALS
OF MARYLAND

Nos. 52 and 54
September Term, 2014

---

JESSICA N. WOZNICKI

v.

GEICO GENERAL INSURANCE COMPANY

---

JEANNINE MORSE

v.

ERIE INSURANCE EXCHANGE

---

Barbera, C.J.
Harrell
Battaglia
Greene
McDonald
Watts
Cathell, Dale (Retired, Specially
Assigned),

JJ.

---

Opinion by Greene, J.
McDonald, J., concurs and dissents.

---

Filed: May 27, 2015

We are called upon to resolve an issue of critical importance for those traversing the many roads of Maryland, namely, the circumstances under which an insurer providing uninsured ("UM") motorist coverage may disclaim any such liability owed to its insured.[1] Because of the common issues of law, we have consolidated two civil cases for the purpose of this opinion. We granted separate petitions for certiorari in *Woznicki v. GEICO Gen. Ins. Co.*, 439 Md. 694, 98 A.3d 233 (2014) and *Morse v. Erie Ins. Exch.*, 439 Md. 694, 98 A.3d 233 (2014), to answer the following questions:

> (1)  Did the Court of Special Appeals err when it held that, as a matter of law, the UM carrier did not waive its right to receive written notice of a pending settlement with the tortfeasor's insurance carrier where there was unequivocal testimony from Petitioner's counsel that he received oral consent to settle from a UM carrier claims representative?
>
> (2)  Did the Court of Special Appeals err when it held that the uninsured motorist (UM) carrier did not bear the burden of proving prejudice arising from Petitioners' failure to give written notice of the pending settlement with the tortfeasors' insurance carrier?

As explained in greater detail below we shall answer each of the questions in the negative and affirm the respective judgments of the Court of Special Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Jessica N. Woznicki

---

[1] Although the insurance policies at issue use both the term "uninsured" and "underinsured," under the statutes at issue, "underinsured" motor vehicles fall under the definition of "uninsured motor vehicles." Md. Code (1995, 2011 Repl. Vol., 2014 Supp.), § 19-509 of the Insurance Article. Accordingly, we shall track the language of the statute and use the term "uninsured motor vehicle" or "UM."

Woznicki's dispute with GEICO arises out of injuries sustained in a motor vehicle collision between Woznicki and James Bowman Houston ("Houston"), which occurred on November 12, 2010. Woznicki was struck, while operating an automobile in Cecil County, after Houston failed to yield the right-of-way while making a turn. It is undisputed that the accident was caused entirely by the negligence of Houston.

At the time of the accident, Houston was insured by Nationwide Insurance Company ("Nationwide") under a motor vehicle liability insurance policy which carried a liability limit of $20,000. Woznicki was covered by a motor vehicle liability insurance policy issued by GEICO.[2] Under the insurance policy, GEICO provided uninsured/underinsured motorist ("UM/UIM") coverage of $300,000. As a condition to UM coverage under the GEICO policy, Woznicki was required to notify GEICO of any settlement offer which would exhaust the tortfeasor's liability insurance policy limits and obtain GEICO's consent to settle prior to accepting any such settlement with the tortfeasor. For a discussion of the policy language see *infra*.

As a result of the injuries sustained during the accident, Woznicki asserted a claim against Houston, through her then-counsel, Ben T. Castle ("Castle"), a Delaware attorney. Nationwide offered to settle all claims for $20,000—Houston's liability policy limit—in exchange for a release of all claims against Nationwide and Houston at some time in March,

---

[2] The GEICO policy is issued to Cary and Jeanne Cover, with Woznicki listed as an additional driver.

2011. In a letter dated March 29, 2011, Nationwide wrote to Castle stating "[t]he enclosed Release of All Claims document confirms our settlement with you/your client." On the same day, Castle sent a letter to the GEICO claims adjuster handling the matter, Ms. Rebecca Davis, stating, in part:

> At this time it appears that the driver of the car that caused the accident injuring Ms. Woznicki, James Houston, has only limited liability coverage through Nationwide Insurance Company. We will provide more information as it becomes available.

The letter does not mention the Nationwide settlement offer letter received by Castle on the same day.

Central to the dispute between Woznicki and GEICO before this Court, Castle contacted GEICO by phone at some point on or about July 7, 2011,[3] and obtained, what Castle and Woznicki characterize as GEICO's oral consent to settle without prejudice to any potential UM claim against GEICO. Castle, who was unable to reach Ms. Davis, the claims adjuster assigned to Woznicki's case, could not recall who he spoke with about the matter. Castle only remembered that the person was a woman.

By letter dated July 7, 2011, Woznicki executed a Release of all claims against Houston. The same day, Castle wrote to GEICO, stating:

> The tortfeasor's insurance carrier, Nationwide, has a limited bodily injury liability policy of $20,000 and has tendered those limits to the injured

---

[3] The exact date of this conversation is unclear. Castle, in his deposition, could not recall the precise date of the conversation and no records of the conversation have been produced.

driver, Jessica Woznicki. We are writing to request GEICO's consent to acceptance of the settlement.

Enclosed for your file is a copy of the Nationwide Policy insuring tortfeasor, James B. Houston, and the Release in exchange for the $20,000.

GEICO responded on August 15, 2011, denying "any and all Underinsured Motorist (UIM) coverage to [Woznicki] . . . because [Woznicki] failed to obtain our consent to settle, which is required by both [§ 19-511 of the Insurance Article] and [Section IV of] the policy contract."

Woznicki, represented by new counsel, filed a Complaint and Demand for Jury Trial against GEICO on April 3, 2012, for breach of the insurance policy. Woznicki sought to hold GEICO liable for damages in excess of the $20,000 she received from Nationwide. After filing its answer, GEICO moved for summary judgment on the grounds that Woznicki was precluded from receiving UM benefits under the insurance policy because she failed to obtain GEICO's consent to settle as required by Maryland law and the insurance policy. Following a hearing on the matter, the trial judge granted GEICO's motion. Judge J. Frederick Price explained from the bench:

> It's clear and undisputed that Section 19-511 was not complied with. In other words, there is—the plaintiff's attorney did not comply with that section. And that's also referenced—incorporated into the policy; therefore, the terms of the policy were not complied with. That's undisputed, I believe. But the court finds that there could be a question of waiver. And I believe that these matters could be waived.
>
> The question then arises is does the vague reference to a telephone conversation constitute—or viewed in a light most favorable to the plaintiff, does that constitute sufficient evidence to be material in a decision.

4

And quite simply, the court finds that under the facts of this case that that reference to a telephone call, with nothing more than has been put forth today, does not constitute sufficient evidence to be material, to affect the decision.

The Court of Special Appeals upheld the decision of the trial court. *Woznicki v. GEICO Gen. Ins. Co.*, 216 Md. App. 712, 90 A.3d 498 (2014). Specifically, the intermediate appellate court concluded that (1) an insurer could waive the requirements of Section 19-511 of the Insurance Article, (2) Woznicki failed to demonstrate a dispute as to material fact concerning whether GEICO had waived such requirements, and (3) GEICO was not required to demonstrate prejudice caused by Woznicki's breach of Section 19-511 or the insurance policy in order to deny her UM coverage.

**B. Jeannine Morse**

Petitioner, Jeannine Morse ("Morse"), was injured in a motor vehicle collision on April 28, 2007 in New Castle, Delaware, when her vehicle was struck by a vehicle driven by Paula Smallwood ("Smallwood"). As a result of her injuries, Morse incurred medical expenses in excess of $22,500. At the time of the collision, Smallwood, the at-fault driver, carried automobile liability insurance with Nationwide Insurance Company ("Nationwide"). Smallwood's policy with Nationwide included a single incident liability limit of $15,000. Also at the time of the collision, Morse maintained UM/UIM coverage through her motor vehicle insurance policy with Respondent, Erie Insurance Exchange ("Erie"), with bodily injury limits of $250,000. Morse's "Uninsured/Underinsured Motorists Coverage Endorsement" in her policy with Erie contained a condition that required Morse to notify Erie

5

of any settlement offer which would exhaust the tortfeasor's liability insurance policy limits and to obtain Erie's consent to settle prior to accepting any such settlement with the tortfeasor. For a discussion of the policy language see *infra*.

After the accident, Morse retained a Delaware attorney, Beverly A. Bove, Esq. ("Bove"), to represent her. Upon demand from Bove, on October 13, 2008, Nationwide offered Morse its entire $15,000 policy limit in settlement of Morse's claims against Smallwood. Nationwide also sent Bove a notarized letter confirming that Smallwood had no other insurance polices applicable to Morse's claims. On October 14 or 15, 2008, Bove contacted by telephone a claims adjuster at Erie to report Morse's UM claim and the settlement offer from Nationwide. In a letter dated October 27, 2008, Bove sent Erie a copy of the Nationwide settlement offer letter. The letter to Erie was not sent by certified mail and was addressed to an incorrect P.O. box. Erie contends that it did not receive the letter until December 5 or 6, 2008. Meanwhile, Morse accepted Nationwide's settlement offer and signed a Release of All Claims on November 3, 2008. Accordingly, at the time of Morse's acceptance of Nationwide's settlement offer, Erie had not given its consent. Morse's attorney wrote on the release: "[N]othing contained in this release waives, limits, or extinguishes any future claims for UM/UIM or PIP benefits."

On February 4, 2009, after accepting Nationwide's settlement offer, Bove first informed Erie by telephone that she had accepted Nationwide's settlement offer and signed

a release.[4]  Following the February 4th telephone conversation, Erie requested by phone and by mail a copy of the release on March 19 and 27, 2009, respectively.  Erie did not receive a copy of the signed release until July 8, 2009, over seven months after it was executed, and nearly four months after Erie requested a copy of the release by letter.

On November 5, 2009, Rucker wrote Bove to advise her that Erie had denied Morse's UM claim, because she failed to send written notice of the Nationwide offer and accepted the offer without Erie's written consent.  On June 17, 2011, Morse sued Erie in the Circuit Court for Cecil County for breach of contract.  A jury trial was held on April 22-23, 2013, following which the jury returned a verdict in favor of Erie, finding that Erie did not breach its contract with Morse.  Morse appealed.

---

[4] The parties appear to contest what was said during this conversation, or rather *who* said what.  On the one hand, Morse, in her brief, asserts that "Mr. Rucker told [Bove] . . . that Ms. Morse did not need Erie's consent to settle with Nationwide.  Mr. Rucker memorialized that telephone conversation by letter, which he wrote to 'confirm our telephone conversation several weeks ago regarding your acceptance of Nationwide's offer of its limit of liability and the fact that you did not need our consent to accept that offer of its limit of coverage.'"  On the other hand, Erie asserts that it was Bove who advised Rucker that she did not need to obtain Erie's consent or send Erie a copy of the settlement and release because Delaware law applied.  Erie asserts that the letter "restated what attorney Bove had stated to [Rucker.]"

Bove's testimony, upon which Morse relies, is not particularly helpful.  Although Bove noted that during the conversation the two discussed "not needing consent" she did not expressly state that she was advised by the claims adjuster that no consent was needed.  Rucker, however, testified that "[Bove] said that . . . Delaware law applied . . . and, therefore, she did not have to basically provide us with any information[.]"  Rucker further stated that "[Bove] said that she did not need Erie's consent to settle the claim[.]"

In any event, whatever was said during this conversation, it was said nearly two months after Morse had already accepted the settlement offer.  There is no suggestion that Erie had waived its rights under the policy or any applicable Maryland law at the time of acceptance.

7

In a reported opinion, a majority of the Court of Special Appeals affirmed, concluding that the failure to comply with the consent to settle procedure contained in the insurance policy and § 19-511 does not trigger Maryland's prejudice rules, and that, for the purposes of § 19-110, obtaining consent to settle is not the equivalent of providing notice. *Morse v. Erie Ins. Exch.*, 217 Md. App. 1, 12, 90 A.3d 512, 518 (2014). The author of the dissenting opinion would have reversed, because, in that judge's view, construing the statute within the context and purpose of the statutory scheme, which is to maintain "balance between the insured's right to speedy recovery and the protection of the UM carrier's subrogation rights[,]" leads to the conclusion that the insurer must show prejudice before disclaiming liability. 217 Md. App. at 37, 90 A.3d at 533.

## II. DISCUSSION

Ultimately at issue in this case is the extent to which an individual's failure to comply with the settlement procedures outlined in Md. Code (1995, 2012 Repl. Vol., 2014 Supp.), § 19-511 ("Uninsured motorist coverage–Settlement procedures") of the Insurance Article affects that individual's right to receive UM coverage from his or her UM carrier.[5] Accordingly, in reaching our conclusion, we must consider two sections of the Insurance Article. Under § 19-511:

> (a) If an injured person receives a written offer from a motor vehicle insurance liability insurer or that insurer's authorized agent to settle a claim for bodily

---

[5] Unless otherwise indicated, all statutory references hereinafter are to the Maryland Insurance Article.

8

injury or death, and the amount of the settlement offer, in combination with any other settlements arising out of the same occurrence, would exhaust the bodily injury or death limits of the applicable liability insurance policies, bonds, and securities, the injured person shall send by certified mail, to any insurer that provides uninsured motorist coverage for the bodily injury or death, a copy of the liability insurer's written settlement offer.

(b) Within 60 days after receipt of the notice required under subsection (a) of this section, the uninsured motorist insurer shall send to the injured person:
(1) written consent to acceptance of the settlement offer and to the execution of releases; or
(2) written refusal to consent to acceptance of the settlement offer.

(c) Within 30 days after a refusal to consent to acceptance of a settlement offer under subsection (b)(2) of this section, the uninsured motorist insurer shall pay to the injured person the amount of the settlement offer.

(d)(1) Payment as described in subsection (c) of this section shall preserve the uninsured motorist insurer's subrogation rights against the liability insurer and its insured.
(2) Receipt by the injured person of the payment described in subsection (c) of this section shall constitute the assignment, up to the amount of the payment, of any recovery on behalf of the injured person that is subsequently paid from the applicable liability insurance policies, bonds, and securities.

(e) The injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer:
(1) on receipt of written consent to acceptance of the settlement offer and to the execution of releases; or
(2) if the uninsured motorist insurer has not met the requirements of subsection (b) or subsection (c) of this section.

(f) Written consent by an uninsured motorist insurer to acceptance of a settlement offer under subsection (b)(1) of this section:
(1) may not be construed to limit the right of the uninsured motorist insurer to raise any issue relating to liability or damages in an action against the uninsured motorist insurer; and
(2) does not constitute an admission by the uninsured motorist insurer as to any

issue raised in an action against the uninsured motorist insurer.

Secondly, we consider whether § 19-110 ("Disclaimers of coverage on liability insurance policies") applies to an insurer seeking to disclaim UM coverage to its insured for the insured's failure to comply with the requirements of § 19-511. Section 19-110 provides that:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

We review issues of statutory construction *de novo*. *See Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004) (quoting *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609, 612 (2002)) ("When the trial court's order 'involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review.'"). It is well established that:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. In construing the plain language, a court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. Statutory text should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory. . . . It is also clear that we avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.

We analyze the contested provisions of Maryland's Insurance Article in the

10

context of the statutory scheme and construe the plain language so that the various sections of the article do not conflict with one another. . . . In addition, the meaning of the plainest language is controlled by the context in which it appears. As this Court has stated, because it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

*Stickley v. State Farm Fire & Cas. Co.*, 431 Md. 347, 358-59, 65 A.3d 141, 148 (2013)

(citations and quotations omitted).

## A. Maryland's Uninsured Motorist Statute

Prior to addressing the questions raised before this Court, some background is appropriate. The settlement procedures of § 19-511 must be understood in the context of Maryland's uninsured motorist coverage scheme, now codified at §§ 19-509 – 19-511 of the Insurance Article. "This procedure was enacted in the context of a broader statutory goal to enable recovery for injured victims." *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 348, 86 A.3d 665, 674 (2014) ("*Buckley II*"). The General Assembly enacted Maryland's UM statute in 1972, which provided originally, in relevant part, that:

> *[E]very policy of motor vehicle liability insurance issued, sold, or delivered in this State . . . MAY contain coverage, in at least the amounts required under Section 7-101 of Article 66 ½ of the Annotated Code of Maryland (1970 Replacement Volume and 1972 Supplement), for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle.*

*State Farm Mut. Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 171-72, 900 A.2d 208, 213 (2006)

(emphasis in original).

11

Since its enactment, the UM statute has undergone several changes, the most salient of which was the decision of the Legislature, in 1975, to make UM coverage mandatory for all motor vehicle liability insurers issuing, selling, or delivering such policies in the State by replacing the term "may" with "shall." 1975 Laws of Maryland 562. UM coverage has steadily expanded in scope over the past several decades. Importantly, the General Assembly recognized "uninsured motor vehicles" as including "**under**insured motor vehicles." 1981 Laws of Maryland 510 (emphasis added). *See also* 1983 Laws of Maryland 656 (permitting excess coverage insurers to offer UM coverage); 1989 Laws of Maryland 542 (requiring motor vehicle liability insurers to offer insureds, in writing, the option to purchase higher UM limits); 1992 Laws of Maryland 641 (requiring insurers to provide UM coverage "equal to the amount of motor vehicle liability coverage"); 1995 Laws of Maryland 515 (expanding the definition of "uninsured motor vehicles").

As this Court explained in *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636 (2007):

> The purpose of the uninsured motorist statute is to provide minimum protection for individuals injured by uninsured motorists . . . [the] statute creates a floor to liability not a ceiling. Consistent with the public policy of affording minimal protection for innocent victims, an insured can purchase "a higher amount of uninsured motorist insurance which will become available when the insured's uninsured motorist coverage, as well his damages, exceed the liability coverage of the tortfeasor."

399 Md. at 612, 925 A.2d at 644 (citations omitted). *See also Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 737, 436 A.2d 465, 474 (1981) (citation omitted) ("The courts have

12

repeatedly stated that the purpose of uninsured motorist statutes is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law.'"); *Kritsings v. State Farm Mut. Auto. Ins. Co.*, 189 Md. App. 367, 375, 984 A.2d 395, 399 (2009) ("The effect [of the UM statute] [i]s to provide an injured insured with compensation equal to that which would have been available had the tortfeasor carried liability insurance in an amount equal to the amount of the injured insured's UM coverage.").

Given the remedial nature of UM coverage, the statute is "to be liberally construed to ensure that innocent victims of motor vehicle accidents can be compensated for the injuries they suffer as a result of such accidents." *State Farm Mut. Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 194, 900 A.2d 208, 226 (2006); *Johnson v. Nationwide Mut. Ins. Co.*, 388 Md. 82, 91-92, 878 A.2d 615, 620 (2005); *Dwayne Clay, M.D., P.C. v. Gov't Emps. Ins. Co.*, 356 Md. 257, 265, 739 A.2d 5, 9 (1999). Liberally construing the statute, however, "does not permit a departure from the legislature's intended application[.]" *Matta v. Gov't Emps. Ins. Co.*, 119 Md. App. 334, 344, 705 A.2d 29, 34 (1998). *See also Webb*, 291 Md. at 730, 436 A.2d at 471 ("This Court has consistently rejected attempts by insurers, as well as insureds and the insurance commissioner, to circumvent the plain language of the required coverage provisions of the statutes dealing with automobile insurance.").

Section 19-511 of the Insurance Article, the provision presently before this Court for

review, was enacted to "to provide a remedy [for] a [specific] problem that ha[d] existed in Maryland's tort system for some time." *Buckley II*, 437 Md. at 347, 86 A.3d at 673 (citation and quotations omitted). As explained by this Court in *Buckley II*:

> [Previously,] an injured person who ma[de] a claim against a liability carrier for limits available under the liability policy [wa]s frequently not allowed by their uninsured/underinsured motorist carrier to give the liability carrier a full release of their claim. Therefore, if the injured person wishe[d] to make an additional claim for their injuries against their underinsured motorist coverage, they g[o]t caught in a situation where the liability carrier w[ould] not give them the limits of the at-fault party's policy without a release and the uninsured/underinsured motorist carrier w[ould] not allow them to give a release to the liability carrier. As a result, they [we]re unable to recover funds from either carrier. This dilemma c[ould] cause a lengthy delay in settlement.

437 Md. at 347, 86 A.3d at 673-74 (quoting *Keeney v. Allstate Ins. Co.*, 130 Md. App. 396, 401, 746 A.2d 947, 950 (2000)). Under § 19-511, "the injured party gets his money more quickly and the uninsured/underinsured motorist carrier would have 'up front' the liability settlement [offered by the tortfeasor]." *Keeney*, 130 Md. App. at 402, 746 A.2d at 950 (quoting Senate Floor Report for S.B. 253 (1995)).

## B. Waiver

With respect to Petitioner Woznicki, we must first determine whether the Court of Special Appeals erred in concluding that GEICO, as a matter of law, did not waive its right to receive written notice of Woznicki's settlement offer from Nationwide under § 19-511 of the Insurance Article and Section IV of the GEICO insurance policy.[6] Prior to addressing whether GEICO *did* waive its rights, we must determine whether GEICO *could* waive such

---

[6] Morse does not raise a waiver argument. Therefore, only the facts underlying Woznicki's petition are considered for the purpose of our waiver discussion.

14

rights under § 19-511. At the outset, we note that there is no dispute that Woznicki failed to send written notice of the settlement offer and failed to obtain GEICO's written consent to settle. We agree with the Court of Special Appeals that the question of whether Woznicki complied with § 19-511 is a question separate and apart from whether GEICO could, and did, waive compliance. We conclude that, consistent with the underlying purpose of § 19-511, an insurer may waive strict compliance with the relevant provisions at issue–namely the insured's duty to send the insurer written notice of the pending settlement offer. We also conclude, as did the intermediate appellate court, that Woznicki failed to overcome GEICO's motion for summary judgment. Summary judgment was entered in favor of GEICO on the ground that Woznicki had not satisfied the requirements of § 19-511 or Section IV of the insurance policy.

## *Does § 19-511 Permit Waiver?*

Under § 19-511(a), where an injured insured receives a settlement offer from a tortfeasor's motor vehicle liability insurer, "and the amount of the settlement offer, in combination with any other settlements arising out of the same occurrence, would exhaust the bodily injury or death limits of the applicable liability insurance policy . . . the injured person shall send by certified mail . . . a copy of the liability insurer's written settlement offer" to his or her UM carrier. Generally, "[w]hen a legislative body commands that something be done, using words such as 'shall' or 'must,' rather than 'may' or 'should,' we must assume, absent some evidence to the contrary, that it was serious and that it meant for

15

the thing to be done in the manner it directed." *Thanos v. State*, 332 Md. 511, 522, 632 A.2d 768, 773 (1993) (per curiam) (quoting *Tucker v. State*, 89 Md. App. 295, 298, 598 A.2d 479, 481 (1991)). Although § 19-511 "establishes a settlement procedure to be followed when a claimant is injured by a party whose liability insurance limit is less than the claimant's uninsured motorist limits" *Buckley II*, 437 Md. at 348, 86 A.3d at 674 (quoting Senate Floor Report for S.B. 253 (1995)), § 19-511 is silent as to whether the various provisions may be waived by the parties involved.[7]

In its brief before this Court, GEICO argues that, as a matter of law, neither an insurer nor an insured may waive the procedural requirements of § 19-511. In support of its contention, GEICO points to the plain language of the statute and the General Assembly's use of the term "shall." GEICO further states that, as we pointed out in *Buckley II*, § 19-511 "establishes a settlement procedure **to be followed**." 437 Md. at 348, 86 A.3d at 674 (emphasis added) (quoting Senate Floor Report for S.B. 253 (1995)). This choice of language, GEICO argues, "provides [a] clear indication that the Maryland Legislature did not intend that the parties could waive the statutory requirements under Insurance Art., § 19-511." Ultimately, GEICO asserts that the decision of the intermediate appellate court would "wreak havoc on Maryland's statutory insurance scheme" by permitting parties to circumvent the plain language of numerous statutory provisions of the Insurance Article. Strict

---

[7] We note that there is no dispute that the relevant provisions of the GEICO insurance policy could, in theory, be waived.

16

adherence to the statute's language, in GEICO's view, promotes the remedial nature of § 19-511 and serves to better meet § 19-511's goals of protecting the insurer and its insured.

Although the Legislature elected to use the term "shall," we decline to hold, as a matter of law, that an insurer may not waive its right to receive written notice under § 19-511. To be sure, the statute states neither that it is waivable nor non-waivable. Permitting an insurer and its insured to waive the written notice component of the statute, however, is clearly consistent with both the purpose of § 19-511 and Maryland's UM scheme in general. Waiver of the relevant provisions of § 19-511 in the context of the instant case is consistent with the Legislature's goal of expediting recovery for the innocent victim. *Buckley v. Brethren Mut. Ins. Co.*, 207 Md. App. 574, 590, 53 A.3d 456, 465 (2012) ("*Buckley I*"), *aff'd*, 437 Md. 332, 86 A.3d 665 (2014) ("The purpose of the UM settlement scheme is to expedite settlement negotiations; not to prolong them.").

Section 19-511 was enacted primarily to remedy the standstill that occurred between the uninsured/underinsured tortfeasor's liability insurer, unwilling to provide the injured victim the limits of the at-fault party's policy in the absence of a full release of all claims, and the injured victim's UM carrier, unwilling to provide a full release of all claims. *Buckley II*, 437 Md. at 347, 86 A.3d at 673-74. This standoff between insurers acted to prevent the injured party from obtaining a prompt recovery. In other words, § 19-511 was enacted principally to promote prompt settlement and recovery for the victim. We do not see how

17

permitting a waiver in the instant case would be contrary to the "broader statutory goal to enable recovery for injured victims." *Buckley II*, 437 Md. at 348, 86 A.3d at 674.

Our decision does not suggest that an insurer or its insured may waive any provision of an insurance statute in the interest of convenience as GEICO argues. For instance, under our reasoning the parties could not "agree for insurance to be issued at limits less than the statutorily required limits in exchange for lower premiums" as GEICO suggests. Such a waiver would be entirely inconsistent with the purpose of "provid[ing] minimum protection for individuals injured by uninsured motorists[.]" *Heffernan*, 399 Md. at 612, 925 A.2d at 644.

Apart from GEICO's reliance on the language of § 19-511, GEICO cites to several opinions of this Court and the Court of Special Appeals, which, in its view, demonstrate that "where there are statutory or regulatory procedures that, by their very terms, delineate what parties 'shall' do, such directives are mandatory and cannot be waived or ignored." GEICO, for instance, relies on our decision in *Gorge v. State*, 386 Md. 600, 873 A.2d 1171 (2005) to emphasize the "consequences of a failure to abide by statutorily-imposed procedures." In *Gorge*, this Court was asked to consider "whether [a defendant] may be sentenced to life without the possibility of parole without having received written notice of the State's intention to pursue that sentence [as required by Md. Code (2002, 2012 Repl. Vol., 2014 Supp.), § 2-203 of the Criminal Law Article ("CL"). ]" 386 Md. at 610, 873 A.2d at 1177. Under CL § 2-203, "[a] defendant found guilty of murder in the first degree may be

18

sentenced to imprisonment for life without the possibility of parole **only if**: (1) at least 30 days before trial, **the State gave written notice to the defendant** of the State's intention to seek a sentence of imprisonment for life without the possibility of parole." (Emphasis added).

Although the State in *Gorge* failed to demonstrate that it provided written notice to the defendant, it argued that oral notice—which defendant admitted to receiving more than 30 days before trial—was sufficient to meet the requirements of the statute. *Gorge*, 386 Md. at 611, 873 A.2d at 1177. Alternatively, the State contended that the defendant had waived his right to receive written notice under the statute. *Id.* We held that the State's oral notice to defense counsel was insufficient to satisfy the requirements of CL § 2-203. As to the issue of waiver, however, we explicitly stated that "[b]ecause the facts do not present themselves, however, **we will not address whether [CL] § 2–203 contemplates permitting a waiver by a defendant of the requirements of the statute**." *Gorge*, 386 Md. at 611-12 n.2, 873 A.2d at 1178 n.2 (emphasis added).

*Gorge* has little bearing on our decision in the instant case because we declined to address the issue of whether the statute at issue permitted a waiver. Instead, we focused upon whether the conduct of the State complied with the language of the relevant statute. That is not the issue presented in this case. Rather, Woznicki argues that GEICO permitted her to deviate from the statutory language. We also note that, while not expressly addressed by this Court in *Gorge*, our opinion at least suggests that the defendant could have waived

19

compliance with the relevant statute if the appropriate facts presented themselves. *See Gorge*, 386 Md. at 611-12 n.2, 873 A.2d at 1178 n.2 ("Insofar as the State is making the additional argument that the defendant waived the requirements of the statute itself, we note that there is no evidence in this record to suggest that the defendant or his counsel, at least 30 days before trial, exercised such a waiver."). Our decision in *Gorge* does not suggest that, as a result of the Legislature's use of the words "only if," we must necessarily conclude that a statute is non-waivable as a matter of law.

GEICO's reliance on *Motor Vehicle Admin. v. Baptist*, 185 Md. App. 56, 968 A.2d 638 (2009), is similarly misplaced. In *Baptist*, the intermediate appellate court considered, among other things, whether the trial court improperly ordered the Maryland Motor Vehicle Administration ("MVA") to enroll appellee, Baptist, in the MVA's Ignition Interlock Program following Baptist's license suspension for driving under the influence. Baptist was advised of his responsibilities for enrollment—which would permit him to drive under an ignition-interlock restricted license in lieu of suspension—but nonetheless failed to complete the requirements within the statutorily proscribed time period of thirty days. 185 Md. App. at 72, 968 A.2d at 648. Indeed, Baptist missed the deadline by nearly one month. *Id.* Despite this failure, the trial court ordered the MVA to enroll Baptist in the program. 185 Md. App. at 63-64, 968 A.2d at 643. The Court of Special Appeals reversed, concluding that "the court had no authority to excuse Baptist's noncompliance [under the statute]." 185 Md. App. at 72, 968 A.2d at 648. Moreover, the intermediate appellate court explained that

20

permitting the trial court to waive Baptist's compliance with the statute would be in contravention of the Legislature's "'paramount purpose' . . . to 'craft[] a regulatory scheme of expedient procedures that swiftly would impose penalties for drunk driving[.]'" 185 Md. App. at 73, 968 A.2d at 649 (citations omitted).

We fail to see the similarity between disallowing a trial court to waive an individual's failure to comply with a statute, which would contravene the Legislature's intent to impose penalties for drunk driving, as in *Baptist*, and an alleged waiver between an insurer and its insured, where such waiver would be consistent with the Legislative purpose of the statute, as in the present case.

Lastly, GEICO directs us to *Kennedy Temps. v. Comptroller of the Treasury*, 57 Md. App. 22, 468 A.2d 1026 (1984), in which the Court of Special Appeals addressed, among other things, whether a bid protestor's failure to comply with the protest regulations under the Code of Maryland Regulations ("COMAR") requiring bid protests to be in writing and filed within seven days, was excused by the alleged waiver by a procurement officer of the Comptroller. 57 Md. App. at 39-40, 468 A.2d at 1034-35. The intermediate appellate court noted, importantly, that the requirements imposed on bid protestors " w[ere] not that of the Comptroller. [Instead, the regulation] was adopted by the Department of Budget and Fiscal Planning, with the approval of the Governor and the Board of Public Works, and was imposed by those agencies upon the Comptroller's office." *Kennedy Temps.*, 57 Md. App. at 41, 468 A.2d at 1035. The Court of Special Appeals, in reaching its conclusion, explained:

21

Whatever the procurement officer's authority might be to waive a procedural regulation of the Comptroller, we find no authority in the law for him to waive a requirement externally imposed pursuant to clear statutory authority. Such a power would be inconsistent with the whole thrust and scheme of the law.

*Id.* Apart from the factual difference between *Kennedy Temps.* and the instant case, *Kennedy Temps.*, similar to *Baptist*, was based, in part, on the Court of Special Appeals's determination that waiver would be inconsistent with the purpose underlying the law. As outlined above, that is not the case here.

### *Was Summary Judgment Appropriate?*

Having determined that GEICO could have waived compliance with the relevant portions of § 19-511, we now address whether the trial court and Court of Special Appeals erred in holding, as a matter of law, that GEICO had not waived any requirements under § 19-511 or Section IV of the insurance policy. As we stated in *Butler v. S & S P'ship*, 435 Md. 635, 665-66, 80 A.3d 298, 316-17 (2013):

The question of whether a trial court's grant of summary judgment was proper is a question of law. Pursuant to Md. Rule 2–501(f), summary judgment is proper where there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. To establish a genuine issue of material fact, a "party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. In other words, the mere existence of a scintilla of evidence in support of the plaintiff's claim is insufficient to preclude the grant of summary judgment; there must be evidence upon which the jury could reasonably find for the plaintiff."

(citations omitted). Accordingly, we must determine whether Woznicki demonstrated the existence of "a genuine dispute as to a material fact by proffering facts which would be

22

admissible in evidence" concerning the alleged waiver by GEICO to survive summary judgment. *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993). We agree with the Court of Special Appeals and conclude that there existed no dispute as to a material fact. Therefore, the Circuit Court's grant of summary judgment was proper as a matter of law.

"Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *Hovnanian Land Inv. Grp., LLC v. Annapolis Town Centre at Parole, LLC*, 421 Md. 94, 122, 25 A.3d 967, 983 (2011) (citation omitted). "[O]ur case law [] require[s] mutual knowledge and acceptance, whether implicit or explicit, of the non-conforming action." *Hovnanian*, 421 Md. at 120, 25 A.3d at 982. "A waiver of a contractual provision must be clearly established and will not be inferred from equivocal acts or language." *Myers v. Kayhoe*, 391 Md. 188, 205, 892 A.2d 520, 531 (2006). As a general matter, "[g]iven the highly factual nature of the waiver inquiry, it is an uncommon case in which the issue can be resolved by summary judgment." *Hovnanian*, 421 Md. at 123, 25 A.3d at 984. In some instances, however, the waiver, or lack thereof, may be so apparent that a court can make a determination as a matter of law. 421 Md. at 124, 25 A.3d at 984. *See also Myers*, 391 Md. at 207, 892 A.2d at 531 (affirming grant of summary judgment because "[no] rational trier of fact [could] conclude that appellants' [sole] statement[,] . . . standing alone, constituted an implied waiver").

23

Central to the dispute between Woznicki and GEICO is the deposition testimony of Woznicki's former attorney, Castle, concerning the alleged telephone conversation between Castle and an unknown GEICO claims representative. On the one hand, Woznicki asserts that based on Castle's deposition testimony "there is [] *no question* that Mr. Castle received oral consent to settle." (Emphasis in original). Woznicki directs us to Castle's statement that "[GEICO] told me [they needed] the Release and the evidence of the coverage and that they would grant their consent." This oral consent, Woznicki contends, "was sufficient to establish a waiver of the statutory and contractual requirements for written notice[.]" On the other hand, GEICO avers that "no rational trier of fact could conclude that GEICO orally provided [Woznicki] its consent to settle with the tortfeasor, or waived the provisions of its GEICO Policy or the requirements of Insurance Art., § 19-511." GEICO notes that it would "strain[] credulity to assert that [Woznicki's then-attorney] just happened to attempt to comply" with § 19-511 where he was admittedly unaware of any such requirements. GEICO notes that Woznicki has relied upon an incomplete portion of Castle's deposition testimony. GEICO argues that the deposition testimony, when considered in its entirety, does not support a reasonable inference that GEICO waived any provision of § 19-511 or its insurance policy.

Accepting the statements in Castle's deposition as true, nothing in the record supports a reasonable inference that GEICO waived compliance with the provisions of § 19-511 or Section IV of the insurance policy. Notably, Castle testified at his deposition as follows:

24

[Counsel for GEICO]: Did, in fact, GEICO ever give you consent to settle [] Woznicki's claim against [ ] Houston who was insured by Nationwide?

[Castle]: **It was my understanding that they had, and it was done by telephone**. And it was not [] Davis. It was somebody taking her place when she was unavailable.

[Counsel for GEICO]: Tell me those details.

[Castle]: My recollection is a telephone call to GEICO asking for [] Davis with whom I'd been dealing all along.

[Counsel for GEICO]: And when did that happen?

[Castle]: Well, it would have been probably within a week, ten days of July 7th prior to. I can't tell you exactly. And [Davis] was unavailable. And I spoke to someone who asked for the file number and policy number and so forth and told—it was a female. I know that. **And told her that—what the situation was and asked her what she wanted from me to confirm this**. And I was told that she wanted a copy of the Release and a copy of the Declaration Page from the Nationwide Policy. And that would be the extent of it.

\* \* \* \*

[Counsel for GEICO]: **Not knowing [about § ] 19–511, why would you have called GEICO even to get their permission then**?

[Castle]: **Because that's our practice in Delaware, and that has always been my customary practice** when I'm dealing with an underinsurance claim, to be very careful to advise the underinsurance carrier as soon as I have a sense that there's going to be an underinsured claim, which **I think I did with GEICO**, and also to find out whether there are any special circumstances or evidence that they want. And I also am very careful to make it clear in the Release that I'm not releasing the underinsurance claim.

\* \* \* \*

[Counsel for GEICO]: **When you spoke with them, had you already settled with Nationwide?**

[Counsel for Woznicki]: You mean settled, you mean like accepted the tender?

[Counsel for GEICO]: Accepted the tender from Nationwide.

[Counsel for Woznicki]: Or gotten a check or—I don't know what you mean.

25

[Counsel for GEICO]: Reached an agreement with Nationwide that the claim of [] Woznicki against [ ] Houston was settled.

[Castle]: **As a practical matter, I certainly would have told them that we have settled or [are] going to settle or [are] willing to settle, that we're going to take it. I certainly would have communicated that that phase of the case is or has been or will be settled, and we're going to be asserting a claim against GEICO for the underinsured coverage. What exact words I used, I can't tell you.**

[Counsel for GEICO]: Okay. **So you have given—you had advised Nationwide that for all practical purposes [] Woznicki's claim against [] Houston was settled, but you wanted to pursue a UIM claim against GEICO?**

[Castle]: **That's true.**

* * * *

[Counsel for GEICO]: As I understand, the conversation that you . . . claim to have had with GEICO about settlement with Nationwide, you're not able to tell precisely whether you said it was your intention to settle or whether the claim had been settled? You just know, you spoke with GEICO about settling the claim?

[Castle]: **I know I spoke with GEICO, and I know I would have told them what the realities were** and that the case was in the process of being settled. **Whether I said has been settled or will be settled or we need your permission to settle—I don't think I said that**, but I told them what the facts were.

* * * *

[Counsel for GEICO]: Did GEICO ever tell you that it did not require written notification?

[Castle]: Only the conversation I referred to in which I asked them what they needed, and I was told the Release and the Declaration Page.

[Counsel for GEICO]: **But you would agree you were never told that you do not need to get written consent from GEICO?**

[Castle]: **I don't recall ever being told that in so many words, no.**

(Emphasis added).

26

Absent from Castle's testimony is any indication that GEICO informed Castle, or that Castle requested, that GEICO was waiving compliance with the relevant statutory and contractual provisions. That Castle did not request that GEICO waive the procedural requirements of § 19-511 and Section IV of the insurance policy is not unexpected given that he, admittedly, was unaware of any such requirements at the time of the conversation. Nor is there any indication that GEICO was actually aware that Woznicki intended to assert a claim for UM coverage against GEICO.

Woznicki's argument rests upon the notion that GEICO, through an unknown claims representative, orally consented to the Nationwide settlement of the underlying bodily injury claim during the telephone conversation with Castle. We disagree with Woznicki that there is "no question" that Castle requested and received GEICO's consent to settle during the alleged phone call. Indeed, during deposition, Castle stated that "[w]hether I said has been settled or will be settled or **we need your permission to settle—I don't think I said that**[.]" (Emphasis added). As stated above, it is not entirely surprising that Castle failed to request GEICO's consent given that he was unaware of such requirements imposed on Woznicki.

Although Castle testified that it was his understanding that GEICO had consented to the settlement with Nationwide during the telephone conversation, we are left to speculate as to what was actually said by either individual during this conversation. Importantly, Castle admittedly was never told "that [he] d[id] not need to get written consent from GEICO" prior to settling with Nationwide. Castle's subjective understanding of what occurred during the

27

conversation lies in contrast to his subsequent correspondence with GEICO by mail. Particularly, on July 7, 2011, the same day Woznicki executed the Release, Castle wrote GEICO stating that "[w]e are writing **to request GEICO's consent to acceptance of the settlement**." (Emphasis added). When confronted with this language, Castle testified that "If I read that letter the way I'm thinking about it, is that I called, asked what information they needed. They told me the Release and the evidence of the coverage and that they would grant their consent." There is no indication in the record that this letter was simply confirming the conversation Castle had with the unknown GEICO representative. Furthermore, following GEICO's denial of UM coverage to Woznicki, Castle wrote:

> Your letter of August 15, 2011 disclaiming GEICO's underinsured coverage for this loss surprised me. Cognizant of the notice requirement,[8] I contacted your office and informed the person who took the call for you that the tortfeasor's carrier had tendered its limits of $20,000, and **inquired what should be done to obtain GEICO's "consent."** I was instructed to forward a copy of the declaration page for the tortfeasor's policy and a copy of the release. This was done by letter on July 7, 2011.

(Emphasis added).

No rational trier of fact could conclude that Castle's sole statement that it was his understanding that he had obtained GEICO's consent, standing alone, constituted a waiver, express or implied, of the statutory or contractual requirements imposed on Woznicki. *Myers*, 391 Md. at 207, 892 A.2d at 531. Castle, who was admittedly unaware of the

---

[8] As noted above, Castle, by his own admission, was unaware of any notice requirement under Maryland Law or the insurance policy.

28

requirements of § 19-511 of the Insurance Article or the GEICO policy, was unable to recall what he might have said to the unknown claims representative who was not handling Woznicki's claim, and was never informed that he did not need GEICO's written consent to settle. Given Castle's own testimony, it can hardly be said that the GEICO representative and Castle had "mutual knowledge and acceptance . . . of the non-conforming action." *Hovnanian*, 421 Md. at 120, 25 A.3d at 982. Castle's subjective understanding of this conversation is simply not enough to establish a genuine dispute of material fact. To hold otherwise would permit a jury to impermissibly engage in speculation on the basis of a single unsubstantiated statement. *Segerman v. Jones*, 256 Md. 109, 134, 259 A.2d 794, 806 (1969) (explaining that "a jury should not be permitted to engage in speculation").

Woznicki directs us to several out-of-state cases, in support of her argument that summary judgment is inappropriate under the facts here. Woznicki relies almost entirely upon *Swiderski v. Prudential Prop. & Cas. Ins. Co.*, 672 S.W.2d 264 (Tex. Ct. App. 1984), noting that it "is particularly instructive." In *Swiderski*, the Court of Appeals of Texas held that a letter sent by the insurer to its insured was sufficient to create a factual issue as to whether the insurer waived compliance with the "consent to settle" clause of its insurance contract, thereby precluding summary judgment. *Id.* at 269-70. The letter at issue stated:

> *[P]lease provide with proper documentation when you settle with Dairyland Ins. Co. so that I can give consideration to the UIM (under-insured motorist coverage) possibility.*

*Id.* (emphasis in original). This evidence, the Court held, "was sufficient to raise a fact issue of the material elements of waiver." *Id.* at 270.

Woznicki asserts that "the only material difference between the fact situation in *Swiderski* and that in the present case is that the claims representative's communications in *Swiderski* w[ere] in writing, while the communication at issue here was oral[.]" We disagree and note that, unlike *Swiderski*, there is no record of what was actually said during the conversation at issue apart from Castle's subjective understanding of what the unknown GEICO representative informed him. Moreover, in the instant case, Castle admittedly never asked GEICO for their consent, or to waive the requirements of the statute or the contract. Furthermore, GEICO never specifically informed Castle that Woznicki did not need written consent to settle. We also note that Castle's own letters to GEICO belie his subjective understanding of the conversation. *Swiderski* does not save Woznicki from summary judgment where the only support for Woznicki's position is the equivocal statement of Castle concerning his subjective understanding of an undocumented conversation.

### C. Prejudice

GEICO and Erie justify their disclaimer of coverage to Petitioners Woznicki and Morse respectively on the basis that Petitioners failed to obtain the insurers' consent to settle as required by the insurance policies and § 19-511 of the Insurance Article. There is no dispute that Woznicki and Morse failed to comply, substantially or otherwise, with § 19-511 and the consent to settle provisions at issue. Rather, Petitioners assert that the Court of

30

Special Appeals erred in holding that a UM carrier is not required to demonstrate prejudice in order to deny UM coverage to its insured for the insured's failure to comply with the consent to settle provision of the insurance policy and § 19-511 of the Insurance Article. We must, therefore, consider whether the prejudice rules are triggered in the context of this case.

As explained below, the prejudice rules arise from statute, *see* § 19-110, and common law, *see Prince George's Cnty. v. Local Gov't Ins. Trust*, 388 Md. 162, 879 A.2d 81 (2005). The prejudice rules apply where an insurer disclaims coverage as a result of the insured's noncompliance with a condition contained in the insurance policy requiring notice or cooperation. We conclude that noncompliance with § 19-511 and the liability policies' consent to settle provision is neither a failure to notify nor a failure to cooperate as contemplated by the prejudice rules. Therefore the instant cases fall outside of the ambit of the rules.

*Pre-§ 19-110 Common Law*

In addition to the duty to pay premiums, automobile insurance policies commonly require insureds, as a condition to the insurance policy, to both (1) promptly notify an insurer of any accident and, where suit is filed against the insured, promptly forward any suit papers served (the "duty to notify") and (2) cooperate with the insurer during the investigation and subsequent defense or settlement of any claim brought against the insured (the "duty to cooperate"). *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 363 Md. 106, 118-19, 767 A.2d 831, 838 (2001). Prior to the enactment of § 482 of Article 48A (now § 19-110),

31

Maryland courts took two different approaches when determining whether an insured's noncompliance with the duty to notify or cooperate with his or her insurer relieved the insurer of its responsibilities. As explained by this Court in *Fidelity & Cas. Co. v. McConnaughy*, 228 Md. 1, 179 A.2d 117 (1962):

> There [were] two main lines of authority in the country. One line takes the formalistic, technical view and holds that policy provisions for notice, forwarding of suit papers and cooperation are conditions precedent to liability by the insurer, and that a breach by the insured discharges the insurer regardless of prejudice. Some courts so holding presume prejudice. The other line holds that the policy provisions are conditions subsequent and prejudice must be shown by the insurer, if it is to be absolved.

228 Md. at 12, 179 A.2d at 122-23. "As a matter of Maryland common law, we did not appear to adopt either view completely." *Allstate Ins. Co.*, 363 Md. at 119, 767 A.2d at 838. "Rather . . . we drew distinctions both between the requirements of notice and cooperation and between non-cooperation based on false statements made by the insured and non-cooperation based on the insured's failure to attend depositions, hearings, or trial, or to assist in giving or obtaining evidence regarding the accident or claim." *Id.*

On the one hand, where the insured failed to give proper notice of an accident or promptly forward suit papers, we applied the formalistic "no-prejudice" approach. *See Watson v. United States Fidelity & Guaranty Co.*, 231 Md. 266, 189 A.2d 625 (1963). In *Watson*, the appellee, United States Fidelity & Guaranty Company ("Company") issued an automobile liability insurance policy to appellant, Watson, requiring Watson to provide the Company written notice of an accident "as soon as practicable" as a condition precedent to

32

coverage under the policy. 231 Md. at 269, 189 A.2d at 626. The Company sought to deny

coverage under the policy as a result of Watson's failure to provide prompt notice following

an automobile accident. 231 Md. at 269-71, 189 A.2d at 626-27. In concluding that the

Company could deny coverage as a result of Watson's failure to provide notice without a

showing of prejudice, this Court began by noting that, under contract principles, the notice

requirement at issue was a condition precedent "that must be performed before any obligation

on the part of the assurer commences." 231 Md. at 271, 189 A.2d at 627. We rejected

Watson's contention that the insurer must demonstrate prejudice prior to a disclaimer of

liability, and emphasized that "[t]his contention [was] not in accord with the Maryland

decisions, nor with the weight of authority elsewhere in this county." 231 Md. at 272, 189

A.2d at 627.

On the other hand, where an insured failed to cooperate by providing false statements

to the insurer, a showing of prejudice to the insurer was required prior to any disclaimer. *See*

*McConnaughy*, 228 Md. at 13, 179 A.2d at 123 ("The cooperation clause is included . . . so

that the insurance company will not be prejudiced in investigation and defense at trial. It

should be construed and applied to effectuate its purpose."); *Indemnity Ins. Co. v. Smith*, 197

Md. 160, 164, 78 A.2d 461, 463 (1951) ("It is thus a well settled rule that to relieve an

insurer of liability on the ground of lack of co-operation, discrepancies in statements made

33

by the insured must be made in bad faith and must be material in nature and prejudicial in effect.").[9]

*§ 19-110's Enactment*

Following our decision in *Watson*, the Legislature enacted Md. Code Art. 48A, § 482, now codified at § 19-110 of the Insurance Article. Chapter 185, Laws of Maryland 1964, enacting Md. Code Art. 48A, § 482. *See State Farm Mut. Auto. Ins. Co. v. Hearn*, 242 Md. 575, 582, 219 A.2d 820, 824 (1966); *Harvey*, 278 Md. at 552, 366 A.2d at 16 ("§ 482 was enacted . . . in response to the rule of law announced in *Watson v. U. S. F. & G. Co.*, 231 Md. 266, 189 A.2d 625 (1963)"). Through the enactment of § 482, the Legislature sought to abrogate the "no-prejudice rule" as articulated by this Court in *Watson*, which permitted insurers to disclaim liability to an insured where the insured failed to comply with his or her contractual duty to notify, which served as a condition precedent to the insurer's liability, irrespective of whether prejudice occurred. *Hearn*, 242 Md. at 582-83, 219 A.2d at 824. *See*

---

[9] Our decision in *Indemnity Ins. Co.* appears to have suggested that no prejudice is required where the insured fails to cooperate by failing to attend hearings, depositions, or trial, or fails to provide the insurer evidence. 197 Md. at 164, 78 A.2d at 463. After the Legislature's enactment of § 482 (now § 19-110), these distinctions are no longer relevant. The statute does not distinguish between non-compliance with the duty to notify and the duty to cooperate. Rather, the statute applies equally. "It is thus clear that the *Watson* approach of regarding notice provisions as conditions, enforceable without regard to prejudice or lack thereof, has not been the law in Maryland for more than three decades." *Sherwood Brands, Inc. v. Hartford Accident & Indem. Co.*, 347 Md. 32, 42, 698 A.2d 1078, 1083 (1997). "In order to avoid its duty to defend or to indemnify on the ground of delayed notice, the insurer must establish by a preponderance of affirmative evidence that the delay in giving notice has resulted in actual prejudice to the insurer." *Id.*

*also Allstate Ins. Co.*, 363 Md. at 122, 767 A.2d at 840 (noting that the General Assembly

may have also been responding to the suggestion in *Indemnity Ins. Co.*, 197 Md. 160, 78

A.2d 461 that prejudice is not required where the insured fails to cooperate by failing to

attend hearings, depositions, and other court proceedings, or provide the insurer with

evidence).

Since its original enactment, the statute has remained substantively the same. Md.

Gen. Assemb., Dep't. of Legis. Serv., Fiscal and Policy Note, H.B. 11 (1996) ("The bill

[enacting § 19-110] revises existing law without making substantive changes.").[10] As

presently worded, § 19-110 provides that:

> An insurer may disclaim coverage on a liability insurance policy on the
> ground that the insured or a person claiming the benefits of the policy through
> the insured has breached the policy by failing to cooperate with the insurer or
> by not giving the insurer required notice only if the insurer establishes by a
> preponderance of the evidence that the lack of cooperation or notice has
> resulted in actual prejudice to the insurer.

That § 19-110 applies only where the insured breached the policy by failing to give

notice or cooperate with the insurer reflects a deliberate decision by the Legislature to limit

the scope of the statute. As we explained in *Harvey*:

> As originally introduced before the General Assembly, § 482 provided that an
> insurance company was required to prove actual prejudice in an action under
> a motor vehicle liability insurance policy where it filed a disclaimer of

---

[10] To be sure, the Legislature expanded the scope of the original rule in 1966. As originally enacted, the statute applied to "motor vehicle insurers." The term "motor vehicle" was ultimately removed. 1966 Laws of Maryland Chapter 205. Now the statute applies to all insurers as defined under the relevant provisions.

35

insurance for "any reason." **The words "any reason" were deleted from the bill prior to final passage. As amended and ultimately enacted, § 482 required insurance companies to prove actual prejudice only where the disclaimer was based on the insured's failure "to cooperate with the insurer or by not giving requisite notice to the insurer."**

278 Md. at 552, 366 A.2d at 16-17 (emphasis added).

*Local Gov't Ins. Trust*

To clarify any confusion, we also note that our decision in *Prince George's Cnty. v. Local Gov't Ins. Trust*, 388 Md. 162, 879 A.2d 81 (2005) makes reference to a "common law" prejudice rule apart from § 19-110.[11] 388 Md. at 181, 879 A.2d at 92. In *Local Gov't Ins. Trust*, this Court was asked to consider, among other things, whether the Local Government Insurance Trust ("Trust"), Prince George's County's ("County") excess insurer, was required to demonstrate prejudice in order to deny coverage to the County on the basis of the County's failure to provide the Trust notice of the underlying incident, claim, and trial brought against the insured as required by the policy. Under the County's policy with the

---

[11] The use of the term "common law" prejudice rule is misleading. Prior to § 19-110 the common law required no prejudice where an insurer sought to disclaim coverage to its insured for the insured's noncompliance with the duty to notify the insurer. By enacting § 19-110, the Legislature sought to alter this approach. Or put differently, by enacting § 19-110, the Legislature announced that it is the policy of this state that insurers must demonstrate prejudice prior to disclaiming coverage to an insured as a result of the insured's noncompliance with a duty to notify. In *Local Gov't Ins. Trust*, cognizant of the Legislature's announcement, we imposed a prejudice requirement on an entity not expressly defined as an "insurer" under the statutory rule. In other words, an insurer may not disclaim coverage to its insured for a failure to give notice or a failure to cooperate under the policy without a showing of prejudice even if the entity does not fit neatly within the statutory definition of an insurer.

36

Trust, service of such notice is a condition precedent to coverage. *Local Gov't Ins. Trust*, 388 Md. at 172-80, 879 A.2d at 91-92.

Although the Trust acted as an "insurer" for the County, it was not expressly covered by the statutory rule.[12] Indeed, the Trust, as an insurance pool under § 19-602 of the Insurance Article, was not an "insurer" for the purposes of § 19-110. *Local Gov't Ins. Trust*, 388 Md. at 181, 879 A.2d at 92. Despite not fitting neatly into the confines of § 19-110, we held that, where the Trust attempted to disclaim coverage to its insured based on a violation of a condition requiring notice, "the Trust was required to show prejudice under the common law." 388 Md. at 169, 879 A.2d at 85. We explained that "[i]n passing the [prejudice] statute, the Legislature apparently aimed to abrogate the common law ['no-prejudice'] rule as articulated in *Watson*[.]" 388 Md. at 181, 879 A.2d at 92-93. By enacting § 19-110 the Legislature "announced the public policy of this state that an insurer must show prejudice before disclaiming coverage based on the insured's breach of a notice provision." 388 Md. at 187, 879 A.2d at 96. Requiring the Trust to demonstrate prejudice in the context of a failure to notify was consistent with the purpose of § 19-110.

---

[12] An "insurer" as defined for the purposes of § 19-110, "includes each person engaged as indemnitor, surety, or contractor **in the business of entering into insurance contracts**." Section 1-101 (emphasis added). The Trust is a public entity which acted as an insurance pool under § 19-602. Although the Trust was perhaps colloquially referred to as an insurer, it was not engaged "in the business of entering into insurance contracts." Therefore 19-110 was inapplicable on its face.

37

Although our holding implies that a broader class of "insurers" than those defined under § 19-110 are required to show prejudice, *Local Gov't Ins. Trust* was confined to a disclaimer based upon the failure to notify. 388 Md. at 187, 879 A.2d at 96-97. There is no suggestion that the reasoning of *Local Gov't Ins. Trust* would apply outside of a disclaimer based upon the failure to notify or cooperate with the insurer. Therefore, to the extent *Local Gov't Ins. Trust* recognized a change in the pre-§ 19-110 "common law" rule, that change is confined to the same circumstances contemplated by § 19-110. *See also Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 418 Md. 300, 323 n.18, 13 A.3d 1268, 1282 n.18 (2011) (explaining that in *Local Gov't Ins. Trust* "we stated merely that, in requiring an insurer to show prejudice when it denies coverage based on a breach of a notice provision, we were not unlike the overwhelming majority of our sister states").

*Contentions*

Petitioners contend that the intermediate appellate court erred in concluding that Maryland's prejudice rules are inapplicable to a failure to comply with § 19-511 and the corresponding consent to settle provisions. Morse avers that we must, as a starting point, consider that § 19-511 was enacted for the benefit of the insured, asserting that "there was never an intention to benefit UIM carriers." Considering its purpose, and that the statute does not expressly contain a sanction, Morse asserts that the Legislature never intended § 19-511 to serve as the basis for denying coverage. Where a failure to comply with § 19-511 is used as the basis for an insurer's disclaimer, both Woznicki and Morse argue that the

38

prejudice rules apply. Petitioners contend that a failure to comply with § 19-511 and the corresponding consent to settle provisions is essentially a failure to provide the required notice as contemplated by the prejudice rules. Ultimately, Petitioners assert that the Court of Special Appeals's decisions, here, are in contravention of Maryland's public policy regarding UM insurance.

Respondents GEICO and Erie begin by noting that § 19-110, by its own terms, applies only to a disclaimer of liability based upon a lack of cooperation or notice. The legislative history as well as our case law, Respondents maintain, demonstrate that § 19-110 narrowly applies to these circumstances. A failure to comply with § 19-511 and the corresponding consent to settle clause, Respondents contend, do not fall into either category. Although § 19-511 contains the term "notice," Respondents argue that the obligations on the insured extend beyond mere notice and include permitting an insurer to consent or refuse to consent to the settlement offer. Erie further argues that the reasoning of *Local Gov't Ins. Trust* is likewise inapplicable as it is similarly confined to an insurer's disclaimer based upon the insured's failure to give the required notice.

*Is A Showing of Actual Prejudice Required Here?*

It is undisputed that Petitioners Woznicki and Morse failed to comply with § 19-511 and the consent to settle clauses of their insurance policies by accepting the liability insurers' settlement offers without obtaining the prior written consent of their UM carriers. The question before this Court is whether, in denying coverage to Petitioners for their

39

noncompliance with the consent to settle clause and § 19-511, the insurers are required to demonstrate prejudice. Stated differently, we consider whether the failure to comply with a consent to settle clause or § 19-511 fits into the circumstances contemplated by the prejudice rules–namely a failure to cooperate or failure to notify.[13] We conclude that it does not.[14]

At the outset, we note that "'consent to settle' clauses are generally upheld, at least to the extent that settlements, consent judgments, releases, covenants not to sue, etc. between insureds and the uninsured motorists are not binding upon insurers unless the insurers have given their consent." *Webb*, 291 Md. at 740, 436 A.2d at 476; *Waters v. United States Fidelity & Guar. Co.*, 328 Md. 700, 717, 616 A.2d 884, 892 (1992). By including a consent to settle clause in its policy, an insurer can protect itself where its insured and an uninsured tortfeasor settle a tort suit which exhausts the applicable liability insurance policy limits. *Waters*, 328 Md. at 717, 616 A.2d at 892; *Webb*, 291 Md. at 739-40, 436 A.2d at 476 ("[T]he insurer can easily protect itself from being bound by [a settlement between the insured and

[13] Both Petitioners assert that noncompliance with the consent to settle clauses and § 19-511 is essentially a failure to notify, as opposed to a failure to cooperate. As we explain herein, noncompliance with a consent to settle clause is neither a failure to notify nor a failure to cooperate.

[14] Although we need only determine whether the prejudice rules apply in the context of this case, we note that "[a] suit based upon the insured's allegations that he is entitled to payment under one of the first party coverage clauses in the contract [i.e. UM coverage] he entered into with his insurance carrier, and that the carrier has refused payment thereby breaching its promise, is clearly a contract action." *Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 552-53, 403 A.2d 1229, 1232 (1979).

the uninsured motorist]. The standard uninsured motorist endorsement . . . requires the insurer's consent to any settlement with the uninsured motorist.").

The consent to settle clauses of both the GEICO and Erie policy are largely the same and track the language of § 19-511. The Erie policy, applicable to Morse, provides in relevant part:

[UM/UIM] insurance does not apply to:

1. damages sustained by **"anyone we protect"** if he, she or a legal representative settled with anyone who may be liable for damages, without **"our"** written consent

\* \* \* \*

*The following duties are added:*

\* \* \* \*

3. **"Anyone we protect"** must notify **"us"** by certified mail of any offer to settle a claim for bodily injury or death that, in combination with any other settlements for the same loss, would exhaust the applicable bodily injury or death limits of the liability insurance policy. Within 60 days after receipt of such notice, **"we"** will send **"anyone we protect:"**
    a. written consent to accept the settlement and to the execution of releases; or
    b. written refusal not to accept the settlement offer. Within 30 days of such notice of refusal, **"we"** will pay **"anyone we protect"** the amount of the settlement offer. Payment of the amount of the settlement offer to **"anyone we protect"** preserves **"our"** right of recovery from anyone else held responsible. Once this payment is made, **"anyone we protect"** is required to transfer the right of recovery up to the amount of such payment to **"us"** and to do nothing to harm this right. Anyone receiving payment from **"us"** and from someone else for the same accident or loss will reimburse **"us"** up to the amount of **"our"** payment.
    If **"we"** fail to meet all of the requirements imposed on **"us"** under this section, **"anyone we protect"** may accept a settlement offer and execute releases from anyone held responsible for the loss without prejudice to any uninsured motorists claim.

(Emphasis in original). Similarly, the GEICO policy, applicable to Woznicki, provides:

41

Section IV [concerning UM/UIM coverage claims] does not apply:
1. To **bodily injury** to an **insured** if the **insured** or his legal representative has made a settlement of his claim which exhausts the applicable **bodily injury** or death limits of the liability insurance without our prior written consent unless:
(a) We are notified in writing by Certified Mail that a tentative agreement to settle for the liability limits of the owner or operator of the other vehicle has been reached;
(b) We did not make a payment equal to the tentative settlement amount to our **insured** within 30 days of our refusal to consent to the settlement offer; and
(c) We responded to the written notice of settlement within 60 days.

(Emphasis in original).

We have characterized § 19-511 as a statutory "consent to settle" clause. *Maurer v. Penn. Nat. Mut. Cas. Ins. Co.*, 404 Md. 60, 73-74 n.4, 945 A.2d 629, 637 n.4 (2007) ("Under some circumstances, where the amount of the settlement or settlements, arising out of the same occurrence, would exhaust liability policy limits, **the uninsured/underinsured carrier is by statute given the option to consent or not to consent to the settlement. Under such circumstances, there exists a 'consent to settle' clause by statute**.") (emphasis added). Section 19-511 plainly requires that the insured send to his or her UM carrier written notice of a settlement offer which would exhaust the tortfeasor's applicable liability insurance policy limit. *See* § 19-511(a) ("[T]he injured person shall send by certified mail, to any insurer that provides uninsured motorist coverage for the bodily injury or death, a copy of the liability insurer's written settlement offer.").

Upon receipt of the required notice, the UM carrier has a period of 60 days in which it must either send "(1) written consent to acceptance of the settlement offer and to the execution of releases; or (2) written refusal to consent to acceptance of the settlement offer."

42

§ 19-511(b). If the UM carrier sends its written refusal, it "shall pay to the injured person the amount of the settlement offer [within 30 days after refusal]." § 19-511(c). Because the UM carrier has a 60 day period in which to make its decision, or 30 days to issue payment following a refusal, the statute necessarily imposes a reciprocal duty on the insured to allow the insurer to make this decision, or permit the insurer to make payment following a refusal. To hold otherwise would render the express time periods outlined in § 19-511(b) and (c) superfluous. Moreover, it would be contrary to the statute itself, which further provides:

> The injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer:
>
> (1) on receipt of written consent to acceptance of the settlement offer and to the execution of releases; or
>
> (2) if the uninsured motorist insurer has not met the requirements of subsection (b) or subsection (c) of this section.

§ 19-511(e). *See also Maurer*, 404 Md. at 74 n.4, 945 A.2d at 637 n.4 ("[T]he uninsured/underinsured carrier is by statute given the option to consent or not to consent to the settlement.").

Section 19-110 is inapplicable in the instant case. It is significant that § 19-511 does not contain a prejudice requirement, nor does it reference § 19-110. As a general matter "[i]t is not the task of the Judiciary to re-write [a] Statute and devise a statutory procedure for the imposition of a statutory remedy. Even if the legislatively-imposed sanction were harsh, it

43

is not for the courts to read into [a] Statute the element of prejudice." *Walzer v. Osborne*,

395 Md. 563, 584, 911 A.2d 427, 439 (2006).

Section 19-110 applies only where an insurer disclaims coverage to its insured on the

ground that the insured has failed to notify the insurer or cooperate with the insurer. The

decision to limit the scope of the statute was deliberate. We have explained:

> As originally introduced before the General Assembly, § 482 [now § 19-110]
> provided that an insurance company was required to prove actual prejudice in
> an action under a motor vehicle liability insurance policy where it filed a
> disclaimer of insurance for "any reason." **The words "any reason" were
> deleted from the bill prior to final passage**. As amended and ultimately
> enacted, § 482 [now § 19-110] required insurance companies to prove actual
> prejudice only where the disclaimer was based on the insured's failure "to
> cooperate with the insurer or by not giving requisite notice to the insurer."

*Harvey*, 278 Md. at 552, 366 A.2d at 16-17 (emphasis added).

Maryland Courts have rejected attempts to apply § 19-110 outside of this context.

This Court had occasion to consider the scope of § 482—§ 19-110's predecessor—in *Gov't*

*Emps. Ins. Co. v. Harvey*, 278 Md. 548, 366 A.2d 13 (1976). Specifically, we considered

whether § 482 applied to a disclaimer of Personal Injury Protection ("PIP") coverage on the

basis of the insured's noncompliance with the proof of claim provision.[15] Following an

---

[15] The policy provided, in part:

> As soon as practicable, within a period not to exceed 6 months after the date
> of the accident, the injured person . . . shall submit to the Company written
> proof of claim including full particulars of the nature and extent of the injuries
> and treatment received and contemplated.

*Harvey*, 278 Md. at 550, 366 A.2d at 15.

automobile accident, the injured insured provided GEICO with notice of the accident and was instructed to submit proof of loss forms within six months to make a PIP claim. 278 Md. at 550-51, 366 A.2d at 15-16. Despite GEICO's subsequent correspondence informing Harvey that proof of loss must be submitted within six months, Harvey submitted the required forms nearly one and a half months late. *Id.* Accordingly, GEICO denied Harvey PIP coverage. 278 Md. at 551, 366 A.2d at 16. In light of the Legislature's decision to limit § 482 to an insured's failure to cooperate and failure to give notice, this Court concluded:

> We think it clear from the history and language of § 482 that its provisions do not apply to insurance disclaimers grounded on the insured's failure to submit proof of loss within the time specified in the policy. That a proof of loss or claim is separate and distinct from a notice of accident is well recognized. A proof of loss enables the insurer to ascertain the nature, extent and character of the loss and to set reserves accordingly. *Empire State Ins. Co. v. Guerriero*, 193 Md. 506, 69 A.2d 259 (1949). The chief purpose of a proof of loss "is to acquaint the insurance company with certain facts and circumstances relative to the loss, forming a basis for further steps to be taken by the company, ranging from full settlement to absolute repudiation of liability." *United States Fire Ins. Co. v. Merrick*, 171 Md. 476, 489, 190 A. 335, 341 (1937). The insurer's right to a proof of loss, where required by the policy, has been characterized as "an important one to the insurer, and one in which it is to be protected." *Automobile Ins. Co. v. Thomas*, 153 Md. 253, 261, 138 A. 33, 37 (1927). *See also* Appleman, Insurance Law and Practice s. 3481, et seq. (1970); 8 Blashfield, Automobile Law and Practice s. 331.5 (1966). GEICO's policy issued to the appellee in this case clearly distinguished between the required notice of an accident and the proof of claim; the provisions with respect to each were contained in separate paragraphs in the policy under the heading 'Conditions.'

278 Md. at 553, 366 A.2d at 17. The basis for the insurer's disclaimer of PIP coverage was the insured's failure to submit a timely "proof of loss" claim. Accordingly, the statutory

requirement that the insured show actual prejudice to deny the claim was inapplicable because a "proof of loss" is not equivalent to a failure to notify.[16]

More recently, the Court of Special Appeals considered the scope of § 19-110 in *Phillips Way, Inc. v. Am. Equity Ins. Co.*, 143 Md. App. 515, 795 A.2d 216 (2002). At issue was the insurance policy's "no action" provision.[17] 143 Md. App. at 517, 795 A.2d at 216-17. The insured, in contravention of the "no-action" provision, "settled a claim made against it by a third party . . . without the knowledge or consent of its insurer." 143 Md. App. at 517, 795 A.2d at 217. Appellant argued that § 19-110 applied because, "[o]btaining [the insurer's] consent naturally requires [appellant] to notify [the insurer] of a pending agreement

---

[16] We note further that if the Legislature had intended for § 482 to apply broadly, it could have expanded the scope of § 482 in response to our interpretation of that statute in *Harvey*. Notably, the statute has remained substantively the same since its original enactment and recodification as § 19-110. We pointed out in *Jones v. State*, 362 Md. 331, 337-38, 765 A.2d 127, 131 (2001) (citations omitted) that "[t]he General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation. This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue."

[17] The provision stated that "No action shall be maintained against the Company by the Insured to recover for any loss under this Insurance Policy unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms and conditions of this Insurance Policy, nor until the amount of such loss has been fixed or rendered certain by either final judgment against the Insured after trial of the issues and the time to appeal therefrom has expired without an appeal having been taken, or, if an appeal has been taken, then after the appeal has been determined or *by agreement between the parties with the written consent of the Company*." 143 Md. App. at 517, 795 A.2d at 216-17 (emphasis in original).

46

with the [third party] and to cooperate by giving [the insurer] an opportunity to decide whether to consent thereto." 143 Md. App. at 519-20, 795 A.2d at 218.

The Court of Special Appeals rejected the appellant's attempt to equate a failure to obtain the insurer's consent to settle with a failure to notify or cooperate, explaining that "[t]he appellant's argument, while ingenious, is unpersuasive. . . . If [appellant] *had* notified [the insurer] of the intended settlement and gave the latter its full cooperation, the condition precedent would still have been breached if [the insurer] failed to give its written consent to that settlement." 143 Md. App. at 520, 795 A.2d at 218 (emphasis in original). The Court of Special Appeals concluded that § 19-110 "is inapplicable when an insurer defends on the basis that its insured failed to meet the condition precedent set forth in a no-action clause." 143 Md. App. at 524, 795 A.2d at 221. Similar to the insurance policy at issue in *Harvey*, "the requirements for notice of claim and the separate requirement for cooperation with the insurer, [were] contained in separate paragraphs from the 'no-action' clause." 143 Md. App. at 522-23, 795 A.2d at 220. The intermediate appellate court further reasoned:

> [O]ne of the main purposes of a no-action clause is to protect [the insurer] "from collusive or overly generous or unnecessary settlements by the insured at the expense of the insurer." That last-mentioned purpose would be difficult to accomplish if an insured could disregard the no-action clause, sue its insurer, and put the nearly impossible burden on the latter of showing collusion or demonstrating, after the fact, the true worth of the settled claim.

143 Md. App. at 524, 795 A.2d at 220-21 (citation omitted).

A failure to comply with a consent to settle clause or § 19-511 is not equivalent to a failure to notify or cooperate, therefore § 19-110 is inapplicable.[18] Although predating the enactment of § 19-511, our decision in *Waters v. United States Fidelity & Guaranty Co.*, 328 Md. 700, 616 A.2d 884 (1992), is instructive. In relevant part, the Court considered the effect that a settlement between the injured insured and the uninsured tortfeasor had on the UM carrier where the insurer had notice of the settlement, but had not given its consent. 328 Md. at 715, 616 A.2d at 891. Although the policy contained a duty to notify the insurer, there was no clause requiring the insured to obtain the insurer's consent before settling. 328 Md. at 716, 616 A.2d at 891. Concluding that the insurer was bound by the settlement, we explained:

> When the uninsured motorist carrier fails to include a consent to settle clause in the uninsured motorist provisions of the policy, and when the carrier, with notice of the tort suit, does not attempt to litigate at trial the underlying tort issues of liability and/or damages, the carrier will ordinarily be bound by a settlement of the tort suit entered into between its insured and the uninsured tortfeasor

328 Md. at 719, 616 A.2d at 893. We explained that a consent to settle clause offered an insurer protection against settlements between the insured and an uninsured tortfeasor, and by not including a consent to settle clause in its insurance policy the insurer had "failed to utilize this method of protecting itself." 328 Md. at 717, 616 A.2d at 892. Or, stated

---

[18] If a UM carrier seeks to disclaim coverage to its insured on the ground that its insured failed to give proper notice or cooperate under the policy, § 19-110 would likely apply. That is not the issue before us. As explained throughout this opinion, we are dealing with neither a failure to notify nor a failure to cooperate as contemplated by § 19-110.

differently, a consent to settle clause acts separate and apart from a duty to notify. *See also*

*West American Ins. Co. v. Popa*, 352 Md. 455, 468, 723 A.2d 1, 7 (1998) (noting that "when

the uninsured/underinsured provisions of the insurance policy do not contain a clause

requiring the carrier's consent before the insured can settle with the tortfeasor, the insured

is entitled to enter a settlement or a consent judgment with the tortfeasor without obtaining

the consent of or without further notice to the carrier").

Apart from providing an insurer greater protection than a notice clause, an insured's

obligations under § 19-511 and the consent to settle clauses contained in the policies extend

beyond mere notice, and include permitting an insurer to make a determination to consent

to the acceptance of the settlement offer within the specified time frame. Consequently, the

failure goes beyond a technical failure to provide notice. Rather it is a failure to provide

notice *and* to allow an insurer the legislatively supplied period to decide whether to consent

or refuse to consent prior to entering into a settlement agreement. We also note that

compliance with the duty to notify or cooperate under the relevant insurance policies is not

equivalent to, and would not necessarily satisfy, the consent to settle clauses and § 19-511.

Indeed, assuming that both GEICO and Erie had been notified of the settlement offer and the

underlying incident, § 19-511 and the consent to settle clause would still have been breached,

as here, where the insured accepted the settlement offer prior to giving the insurer time to

make a determination as to whether to consent to acceptance of the settlement offer.

49

We also note that the unilateral decision of the insured to accept the liability insurer's settlement offer and execute a release of claims without his or her UM carrier's consent negatively impacts the UM carrier's ability to preserve its subrogation rights against the tortfeasor. The insurer's right to seek subrogation against the uninsured tortfeasor is expressly provided by § 19-511. *See* § 19-511(d)(1) ("Payment [by the UM carrier to its insured under § 19-511(c)] shall preserve the uninsured motorist insurer's subrogation rights against the liability insurer and its insured.").

Morse suggests that "the common law prejudice rule should apply even if a case does not fit neatly into the specific language of § 19-110." The rule expressed in *Prince George's Cnty. v. Local Gov't Ins. Trust*, 388 Md. 162, 879 A.2d 81 (2005), may be broader in terms of to *whom* it applies, however, we disagree that it is broader than § 19-110 in *where* it applies. As we explained above, there is no indication that *Local Gov't Ins. Trust* extends the prejudice rule beyond the circumstances contemplated by § 19-110.

Petitioners ultimately rely upon the remedial purposes underlying the enactment of Maryland's UM scheme, arguing that it would be inconsistent with the purpose of § 19-511 to permit an insurer to disclaim liability where the insured fails to comply with the settlement procedures.[19] To be sure, "[t]his procedure was enacted in the context of a broader statutory

_____

[19] Morse makes two additional arguments. First Morse avers that "the trial court should have granted [her] motion for partial judgment at the close of all evidence" because Erie failed to demonstrate prejudice. As indicated above, § 19–110 and *Local Gov't Ins. Trust* are inapplicable. Therefore no showing of prejudice was required. Alternatively, Morse contends that the jury should have been given Morse's requested jury instruction,
(continued...)

50

goal to enable recovery for injured victims," *Buckley II*, 437 Md. at 348, 86 A.3d at 674, and given its remedial nature, the statute is "to be liberally construed to ensure that innocent victims of motor vehicle accidents can be compensated for the injuries they suffer as a result of such accidents." *DeHaan*, 393 Md. at 194, 900 A.2d at 226. Essentially, Petitioners aver that by imposing the prejudice rules in the context of this case, we would better effectuate the purpose underlying UM insurance. Despite a liberal construction of § 19-511, we must not depart from the Legislature's intended application of § 19-110.

That § 19-511 "was enacted in the context of a broader statutory goal to enable recovery for injured victims," *Buckley II*, 437 Md. at 348, 86 A.3d at 674, does not necessitate that it falls under the purview of § 19-110, enacted for a different purpose some thirty years earlier. As we explained above, the Legislature "in enacting § 19-110, announced the public policy of this state that an insurer must show prejudice before disclaiming coverage **based on the insured's breach of a notice provision**." *Local Gov't Ins. Trust*, 388 Md. at 187, 879 A.2d at 96 (emphasis added). Although these cases present us with sympathetic individuals, we decline to ignore the Legislature's deliberate choice to limit the application of § 19-110. Had the Legislature intended for § 19-110 to apply to an

---

[19](...continued)
MPJI-Cv 14:11. The requested jury instruction as amended provides, in relevant part, that "[t]he failure of the insured to give [] notice frees the insurance company from responsibility . . . provided that the failure actually prejudiced the insurance company[.]" This jury instruction plainly applies to an insured's failure to notify his or her insurer. As we have stated above, noncompliance with § 19–511 and the consent to settle clauses at issue is not equivalent to a failure to notify. Therefore the requested jury instruction was not proper.

insured's noncompliance with a consent to settle clause, a notice of claim clause, a no-action

clause, or any number of clauses commonly found in insurance policies, it certainly could

have said so.  Moreover, had the Legislature intended to insert a prejudice requirement in §

19-511 when it was enacted three decades later, or make reference to § 19-110, it had the

ability to do so.

Petitioners cite to numerous out-of-state cases which require prejudice in the context

of an insured's noncompliance with a consent to settle clause.[20]  Our emphasis in the instant

[20]  Petitioners cite to well over thirty cases collectively.  *See, e.g., Shelter Mut. Ins. Co. v. Bough*, 834 S.W.2d 637 (Ark. 1992); *Lauric v. USAA Cas. Ins. Co.*, 209 P.3d 190 (Colo. App. 2009); *Am. Fire & Cas. Co. v. Sinz*, 487 So. 2d 340 (Fla. Dist. Ct. App. 1986); *Taylor v. Gov't Emps. Ins. Co.*, 978 P.2d 740 (Haw. 1999); *Bantz v. Bongard*, 864 P.2d 618 (Idaho 1993); *Progressive Direct Ins. Co. v. Jungkans*, 972 N.E.2d 807 (Ill. App. Ct. 2012); *Kapadia v. Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848 (Iowa 1988); *Newark Ins. Co. v. Ezell*, 520 S.W.2d 318 (Ky. 1975); *Hebert v. Green*, 311 So. 2d 223 (La. 1975); *Beal v. Allstate Ins. Co.*, 989 A.2d 733 (Me. 2010); *MacInnis v. Aetna Life & Cas. Co.*, 526 N.E.2d 1255 (Mass. 1988); *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn. 1983); *Van Kampen v. Waseca Mut. Ins. Co.*, 754 N.W.2d 578 (Minn. Ct. App. 2008); *Tegtmeyer v. Snellen*, 791 S.W.2d 737 (Mo. Ct. App. 1990); *Sorensen v. Farmers Ins. Exch.*, 927 P.2d 1002 (Mont. 1996); *Hasper v. Center Mut. Ins. Co.*, 723 N.W.2d 409 (N.D. 2006); *Horace Mann Cos. v. Pinaire*, 538 N.W.2d 168 (Neb. 1995); *State Farm Mut. Auto. Ins. Co. v. Fennema*, 110 P.3d 491 (N.M. 2005); *Weinberg v. Transamerica Ins. Co.*, 465 N.E.2d 819 (N.Y. 1984); *Silvers v. Horace Mann Ins. Co.*, 378 S.E.2d 21 (N.C. 1989); *Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927 (Ohio 2002); *Federated Serv. Ins. Co. v. Granados*, 889 P.2d 1312 (Or. Ct. App. 1995).  Several of the jurisdictions upon which Petitioners rely have concluded that the insured's failure to obtain his or her insurer's consent before settling with the liability insurer for policy limits creates a rebuttable presumption of prejudice to the insurer.  *See, e.g., Am. Fire & Cas. Co. v. Sinz*, 487 So. 2d 340 (Fla. Dist. Ct. App. 1986); *Ranes v. Am. Family Mut. Ins. Co.*, 580 N.W.2d 197 (Wis. 1998).

Morse notes that there are six states which do not require prejudice prior to denying coverage on the basis of an insured's failure to obtain the insurer's consent to settle.  *See Downey v. Travelers Prop. Cas. Ins. Co.*, 74 So. 3d 952 (Ala. 2011); *Dalke v. Allstate Ins.*

(continued...)

case is on the text of § 19-110 and the General Assembly's underlying purpose in enacting

§ 19-110. The evolution of the prejudice rule in Maryland is rather unique. As we explained

in *Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 418 Md. 300, 13 A.3d 1268 (2011):

> "To the extent the parties attempt to squeeze a square peg—that is, Maryland's notice-prejudice statute, as embodied in § 19–110, and our jurisprudence—into a round hole—that is, the notice-prejudice jurisprudence of other states and jurisdictions—they are unpersuasive. *See Bozman v. Bozman,* 376 Md. 461, 490, 830 A.2d 450, 467 (2003) ("[D]ecisions of our sister jurisdictions are not binding on this Court and ought not dictate the course of jurisprudence in the State of Maryland."). **Of the more than three-dozen states adopting a notice-prejudice rule**, *see Local Gov't Ins. Trust,* 388 Md. at 18[3-84 n.9], 879 A.2d at 94[-95 n.9], **it appears that only two did so legislatively, as Maryland has**.")

418 Md. at 327-28, 13 A.3d at 1285 (emphasis added).

Although Petitioners have provided us with numerous out-of-state jurisdictions which

have required prejudice where an insurer seeks to disclaim coverage to its insured for the

insured's failure to obtain consent to settle, few courts have done so in the context of a

statutory prejudice rule. Moreover, of the states that, similar to Maryland, have legislatively

addressed this issue, they expressly include a prejudice requirement in the context of a failure

to obtain an insurer's consent to settle unlike §19-511. *See* Neb. Rev. Stat. § 44-6413 ("The

uninsured and underinsured motorist coverages provided in the Uninsured and Underinsured

<hr />

[20](...continued)
*Co.*, 935 P.2d 1067 (Kan. Ct. App. 1997); *Lee v. Auto-Owners Ins. Co.*, 554 N.W.2d 610 (Mich. Ct. App. 1996); *Stevens v. Merchants Mut. Ins. Co.*, 599 A.2d 490 (N.H. 1991); *Fraioli v. Metro. Prop. & Cas. Ins. Co.*, 748 A.2d 273 (R.I. 2000); *Osborne v. Nat'l Union Fire Ins. Co.*, 465 S.E.2d 835 (Va. 1996).

53

Motorist Insurance Coverage Act shall not apply to: (a) Bodily injury, sickness, disease, or death of the insured with respect to which the insured or his or her representative makes, without the written consent of the insurer, any settlement with or obtains any judgment against any person who may be legally liable for any injuries **if such settlement adversely affects the rights of the insurer**[.]") (emphasis added); *Horace Mann Cos. v. Pinaire*, 538 N.W.2d 168, 172 (Neb. 1995) ("Under the terms of the [Nebraska statute], an insurer can avoid its policy obligation only if the insured's settlement with the tort-feasor 'adversely affects' the insurer's rights."). *See also* N.D. Cent. Code § 26.1-40-15.6 ("The uninsured and underinsured coverages provided for . . . do not apply . . . [w]hen the insured, without the written consent of the insurer, shall make any agreement or settlement with any person who may be legally liable therefor, **if such agreement adversely affects the rights of the insurer**.") (emphasis added).

The out-of-state opinions Petitioners cite to do not bear heavily on our decision interpreting the reach of § 19–110 which is expressly limited to a disclaimer grounded on a failure to notify or a failure to cooperate with an insurer. Similarly these opinions have little affect on our reading of the "common law" prejudice rule of *Local Gov't Ins. Trust*, which, as stated above, applies to the same circumstances contemplated by § 19–110.

**JUDGMENTS OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY THE COSTS IN THIS COURT AND IN THE**

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 52 and 54
September Term, 2014

---

JESSICA N. WOZNICKI

v.

GEICO GENERAL INSURANCE COMPANY

---

JEANNINE MORSE

v.

ERIE INSURANCE EXCHANGE

---

Barbera, C.J.
Harrell
Battaglia
Greene
McDonald
Watts
Cathell, Dale (Retired, Specially
Assigned),
            JJ.

---

Concurring and Dissenting
Opinion by McDonald, J.

---

Filed: May 27, 2015

The Majority Opinion provides a thorough and scholarly discussion of Maryland Code, Insurance Article ("IN"), §19-511, in the context of these consolidated cases. But I do not join the opinion, as I come to a different conclusion on one of the issues. I agree with the Majority Opinion as to the disposition of the first issue in *Woznicki* (waiver). I disagree with the Majority Opinion as to the disposition of the second issue common to both cases (required showing of prejudice).

As the Majority Opinion explains, although an insurer may waive compliance with IN §19-511, Ms. Woznicki did not establish a genuine dispute of material fact to avoid summary judgment on that issue. But neither GEICO nor Erie should be excused from their undertakings to provide under-insured motorist ("UM") benefits unless they are able to show they were prejudiced by the failure of the insured to obtain the UM insurer's consent prior to settling for the limits of the at-fault driver's policy. In reaching a contrary conclusion, the Majority Opinion misinterprets IN §19-511. Judge Woodward's dissenting opinion in *Morse* explains well the prejudice issue, *see* 217 Md. App. at 33-39, and I will only briefly summarize it here.

As the Majority Opinion recounts, UM coverage is designed to compensate a victim of an automobile accident when the at-fault driver lacks sufficient insurance to make the victim whole. Majority slip op. at 11-13. To facilitate the payment of that compensation to the injured person, the Legislature enacted IN §19-511 to eliminate the stand-offs that had developed between liability insurers and UM insurers and that delayed payment of compensation to victims from either insurer. Majority slip op. at 13-14, 17-18. The statute

does so by requiring the UM insurer to make a prompt choice between (1) paying UM benefits, as well as the amount offered by the at-fault driver's insurer, but preserving subrogation rights and (2) simply paying UM benefits and forgoing subrogation rights. The statutory consent-to-settle process is essentially a notice that starts the clock ticking for the UM insurer to make that choice. Indeed, the UM insurer's consent is not a condition for the injured party to obtain compensation. The statute provides for the injured party to obtain compensation from the UM insurer, as well as the liability insurer, even if the UM insurer neglects to make that choice and neither consents nor declines to consent to the settlement. *See* IN §19-511(e)(2).

The General Assembly, in enacting IN §19-110,[1] and this Court, in expounding the common law,[2] have both directed that a provision like IN §19-511 is not a basis on which an insurer may avoid payment unless there is a showing of actual prejudice to the insurer. To come to a contrary conclusion, the Majority Opinion reasons that neither IN §19-110 nor the common law prejudice rule apply because they are not mentioned in IN §19-511. Majority slip op. at 51-52. By the same token, however, nothing in IN §19-511 states that non-compliance results in forfeiture of UM insurance benefits, but the Majority Opinion is willing to read that result into the legislative silence.

---

[1] *See Sherwood Brands Inc. v. Great American Ins. Co.,* 418 Md. 300, 310-24, 13 A.3d 1268 (2011).

[2] *See Prince George's County v. Local Government Ins. Trust*, 388 Md. 162, 181-88, 879 A.2d 81 (2005).

2

Under the Majority Opinion, the UM insurer escapes its obligation to pay UM benefits entirely without any need to show that it suffered any disadvantage from the failure of its insured to obtain a timely consent to the settlement with the liability insurer. This is a windfall to the insurer and a trap for the insured. I would hold, consistent with IN §19-110 and the common law, that the UM insurer must show prejudice.